[No. 4504.]

## MOORE v. THE PEOPLE.

**1. Practice in Criminal Cases—Informations—Conspiracy—False Pretenses.**

In a prosecution for conspiracy to obtain goods by false pretenses the gist of the offense is the unlawful combination and agreement, and it is unnecessary to set forth in the information the means agreed upon to obtain the goods, but is sufficient to set forth the conspiracy according to the fact.

**2. Same.**

In a prosecution for conspiracy to obtain goods by false pretenses by means of counterfeit pay checks of a corporation, it is not necessary to give a particular or minute description of the checks in the information, but is sufficient if it appears from the information that they were such instruments as might be sold and disposed of by means of the false pretenses set forth.

**3. Practice in Criminal Cases—Joint Defendants—Separate Trials.**

Where several defendants are jointly indicted, an application by one for a separate trial in which he alleges that there is material evidence admissible against the other defendants, which is not admissible against the applicant, is not sufficient to entitle the applicant to a separate trial as a matter of right.

**4. Evidence—Admissibility—Conspiracy.**

In a prosecution for conspiracy when the fact of a conspiracy is shown, the acts and declarations of the conspirators, or of any of them, in furtherance of the conspiracy, are admissible in evidence not only against the persons who originally conspired together, but also against any person who joined with them in the consummation or attempt at consummation of the conspiracy.

**5. Practice in Criminal Cases—Juries.**

In a criminal prosecution, before the jury was accepted by either side or sworn to try the case, but after the jurors had been examined and passed for cause, a continuance was granted at defendant's request for a period of about twenty days and the jurors were discharged, but upon an objection by defendant to their discharge they were immediately recalled and excused from further attendance until the day to which the cause was continued. On the day to which the cause was continued it was again continued for a period of about one month at the request of the prosecution and the jurors were discharged. Held, that the action of the court in discharging the jurors was not an abuse of dis-

cretion nor prejudicial to defendants rights, and that a jury was properly summoned by open venire to try the case.

**6.  Same—Peremptory Challenges.**

In empaneling a jury in a criminal case where by rule of court the parties were required to exercise their peremptory challenges alternately, a ruling of the court that the district attorney by .passing a challenge waived the right to challenge any juror then in the box, but did not exhaust one of his peremptory challenges, and that he had the right to use the full number of his challenges on jurors subsequently called was not erroneous or prejudicial to defendant's rights although the prosecution was thereby allowed to make several peremptory challenges after the defendant had exhausted his.

**7.  Practice in Criminal Cases—Instructions—Conspiracy.**

In a prosecution of several defendants for conspiracy, where one defendant plead guilty to one count in the information and the count for conspiracy was dismissed as to him, an instruction which told the jury that the said defendant was not on trial and that they should not consider the case as to his guilt or innocence, and that they should consider him only in connection with the other defendants, and that if they failed to find that any of the other defendants had conspired with each other to commit the offense, but did find that any one of them had conspired with the party against whom the charge had been dismissed such defendant so conspiring might be convicted, was not prejudicial to the defendants on trial where they were all convicted of the conspiracy.

*Error to the District Court of Pueblo County.*

The plaintiff in error and others were convicted of a conspiracy to commit a felony and sentenced to a term in the penitentiary. There are three counts in the information. The first count charges a conspiracy to obtain money, goods and chattels in amounts and quantities of greater value than twenty dollars by means of false pretenses, without specifying the pretenses intended to be employed; the second count charges a conspiracy to obtain money, goods and chattels in amounts and quantities of greater value than twenty dollars, by means of certain false pretenses to be made in the sale and disposition

of false, forged and counterfeit pay checks resembling and purporting to be the genuine pay checks of The Colorado Fuel & Iron Company; the third count charges a conspiracy to falsely make, forge and counterfeit pay checks of The Colorado Fuel & Iron Company, and to utter and pass such forged checks as true and genuine, with intent to defraud. The defendants were convicted upon the second count of the information. In this count it is charged that A. C. St. Clair, George H. Smith, Con. S. Duncan and H. H. Moore did, on September 21, 1901, in the county of Pueblo, in the state of Colorado, "feloniously, falsely and maliciously combine, conspire, confederate and agree to and with each other, to do and co-operate with each other in the commission by them, or some one or more of them in the said county of Pueblo, an unlawful act, to wit, a felony," which felony was, "feloniously, fraudulently, knowingly and designedly, by means of certain false and fraudulent pretenses there and thereafter to be used, made and availed of by the said named persons, or some one or more of them, to obtain from divers of the citizens of the said state of Colorado and residing in the said county of Pueblo (the name or names of which said citizens is and are to the said district attorney unknown), divers sums of money and divers goods, wares and chattels or other valuable things, with the intent knowingly, designedly, fraudulently and feloniously to cheat and defraud the person or persons from whom the said money, goods, wares, chattels, effects or other valuable things as aforesaid should be so fraudulently and feloniously obtained by means of said false pretenses, and that the value of the money, goods, wares, chattels, effects or other valuable things aforesaid to be so obtained in some one or more of the instances where the obtaining of said money or property by said false pretense

or pretenses was agreed to be so obtained, was to exceed the value of twenty dollars ($20) lawful money of the United States of America.'' That to effect the object of said conspiracy, it was then and there agreed, ''that the said named persons should execute or cause to be executed certain paper writings to be in part engraved, in part printed, in part stamped and in part in writing, to have the form and similitude of what is and has been commonly known in the said county of Pueblo as the 'pay checks' of a corporation known as The Colorado Fuel & Iron Company (said corporate body being then and there duly organized and existing under and by virtue of the laws of the state of Colorado), but which paper writings when fully executed according to the intent and purpose of the said felonious and unlawful conspiracy as aforesaid, would be, in fact, wholly fictitious, and of no true and intrinsic value whatever, but which would nevertheless be so prepared and executed as to be calculated, intended and fitted to deceive the general public, and especially the citizens of the said county of Pueblo, by leading such citizens to believe that the said paper writings would, when so executed and completed, be in fact the true and lawful pay checks of the said The Colorado Fuel & Iron Company, and calling for the payment by the said company through the bank in which said checks were customarily honored, of the amount of money to be designated in said paper writings to the order of the person therein named as payee, and that in pursuance of the said felonious conspiracy, combination, confederacy and agreement, as aforesaid, the said named persons, or some one or more of them, was to present, pass, endorse and negotiate the said false and fraudulent paper writing or writings when so executed, to some one or more of the citizens of the said county of Pueblo, for the purpose of obtain-

ing money, goods, wares, chattels or other valuable thing, by means thereof, and the said felonious conspiracy, combination, confederacy and agreement, as aforesaid, was also to the effect that when the said false and spurious paper writing as aforesaid was to be presented for the purpose aforementioned, it would be then and there knowingly, designedly and feloniously, falsely pretended by the conspirator or conspirators so presenting the said paper writing, that the said paper writing was in fact the true and genuine pay check of the said The Colorado Fuel & Iron Company, and that the conspirator or conspirators so presenting the same for the purposes aforesaid, was the lawful owner or holder thereof, either as payee or as endorsee or assignee thereof, with the intent then and there by means of said false and spurious writings, as aforesaid, to cheat and defraud the citizen or citizens of said Pueblo county, as aforesaid, to whom the same might be presented and negotiated by way of payment or in exchange for the money, goods, wares, chattels or other valuable things to be so obtained thereby.'' It is also alleged that the defendants were arrested before the consummation of the conspiracy.

In response to a motion of the defendants, a bill of particulars was filed by the district attorney, setting out forty-seven completed pay checks and one hundred and ninety-four incomplete, or blank, pay checks, purporting to be pay checks and blank checks of The Colorado Fuel and Iron Company and bearing the engraved signature ''C. F. Freeland, Cashier,'' as having been made by the defendants in furtherance of the conspiracy.

On February 1, 1902, the plaintiff in error filed a motion for a separate trial, accompanied by affidavit, which motion was denied by the court. On February 3, the case came on for trial, and a jury was called,

sworn and examined on their *voir dire*.  At the conclusion of the examination, the district attorney asked leave of court to indorse upon the information the name of Homer Hogoboom.  The defendants thereupon asked for a continuance to the next term of court upon the ground of surprise. The court granted a continuance until February 24, and discharged the jurors in the box, but upon objection being made by the defendants to the discharge of the jurors, immediately recalled them and excused them from further attendance upon the court until February 24. The defendants objected to excusing the jury until February 24, and also to the court's calling them back after having discharged them.

On February 24 a continuance was granted until March 31, on account of the illness of a witness for the prosecution, and the jurors in the box were discharged.   The defendants objected to the continuance and to the discharging of the jurors.

On March 31, when the case came on for trial, the defendants interposed a challenge to the entire panel of jurors upon the ground that the jurors who were in the box at the time of the last continuance had been excused, over the objection of the defendants, and the panel was then depleted, necessitating a trial upon a panel summoned by open venire.   The record then recites that, "thereupon the empaneling of a jury proceeded by alternate challenges first by the state and then the defendants, until a point was reached where the defense had exercised thirty peremptory challenges and the state had exercised fifteen challenges and waived their right to challenge fifteen times; whereupon the state attempted to exercise another peremptory challenge, to which the defense objected for the reason that the state challenges and waivers had already amounted to thirty. Which objection was overruled by the court, and the chal-

lenge allowed the state,—the court holding that the state has a right to exercise thirty peremptory challenges aside from all waivers of challenges; also holding that the state cannot exercise challenges as to any juror that was in the box at the time when they waived the right of peremptory challenge." To which ruling of the court the defendants excepted. The people, over the objections of the defendants, exercised three more peremptory challenges, and the defendants asked to be permitted to exercise another peremptory challenge, but were refused upon the ground that they had used their thirty peremptory challenges.

Instruction No. 3, given by the court, is as follows:

"The court further instructs the jury that the defendant, George H. Smith, is not being tried at this time, and in so far as your consideration of the case is concerned, you will consider the case as to the guilt or innocence of the defendants, A. C. St. Clair, Con. S. Duncan and H. H. Moore; and as to the said defendant, George H. Smith, you may consider him only in connection with the said conspiracy as one of the parties thereto; that is, notwithstanding whether or not you find any two of the defendants, A. C. St. Clair, Con. S. Duncan and H. H. Moore, agreed and conspired with each other for the commission of the offense charged in the first and second counts of the information, yet, if you find that any one of said defendants conspired to commit the offense with the said George H. Smith, you may find such defendant guilty of conspiracy the same as if the said George H. Smith was a defendant in the said case and being tried with the said defendant."

The verdict of the jury was as follows: "We, the jury, find the defendants, A. C. St. Clair, Con. S. Duncan and H. H. Moore, guilty of conspiracy in

manner and form as charged in the second count of the information, to obtain money, goods, wares, chattels, effects or other valuable things over the value of twenty dollars. Paul H. Wilson, foreman.''

A motion for new trial was overruled, judgment was rendered upon the verdict, and the defendants were sentenced to the penitentiary.

Mr. C. H. Pierce, Mr. M. G. Saunders and Mr. H. T. Sale, for plaintiff in error.

Mr. N. C. Miller, attorney general, and Mr. I. B. Melville, assistant attorney general, for the people.

Mr. Justice Steele delivered the opinion of the court.

The defendant, H. H. Moore, brings the case here by writ of error. He relies upon five assignments of error to reverse the judgment. 1. That the information under which the defendant was convicted was insufficient and does not state a criminal offense. 2. That the court erred in overruling his motion for separate trial. 3. That the court erred in excusing jurors, thereby depleting the panel of jurors to such an extent that an open venire was necessary to complete the panel. 4. That the court erred in allowing the state peremptory challenges after it had waived fifteen times and challenged fifteen times. 5. That the court erred in giving instructions, particularly instruction number 3.

We shall consider the objections in their order.

The information is well drawn. The objection urged against it is that it does not set forth with sufficient certainty the contents or substance of the instruments called pay checks, concerning which the false pretenses, it is alleged, were to be made. It is sufficient to set forth a conspiracy according to the

fact. The gist of the offense is the unlawful combination and agreement; and it has been held to be unnecessary to set forth in the indictment the means agreed upon in a conspiracy to obtain goods by false pretenses.—*State v. Crowley and others,* 41. Wis. 271.

It is undoubtedly the better practice, when it can be done, to set out the means intended to be employed, with sufficient certainty to · identify the offense charged and to enable the defendants to prepare for trial. We think it was not necessary to give a particular or minute description of these pay checks in the information. It is enough if it appears from the information that they were such instruments as might be sold and disposed of to the citizens of Pueblo county by means of the false pretenses set forth; and this does appear from the allegation that, when executed and completed, they would purport to be "the true and lawful pay checks of the said The Colorado Fuel and Iron Company, and calling for the payment by the said company through the bank in which said checks were customarily honored, of the amount of money to be designated in said paper writings to the order of the person therein named as payee."

The statute under which the defendant claimed the right to a separate trial is as follows: "When two or more defendants are jointly indicted for any felony, any defendant against whom there is evidence, which does not relate to the reputation of such defendant, and which would be material and admissible as to such defendant, if tried separately, but which would be inadmissible as to any other of said joint defendants if tried alone, such defendant against whom evidence as aforesaid, is material and admissible, shall be tried separately. In all other cases, defendants jointly indicted or prosecuted, shall

be tried separately or jointly in the discretion of the court.''—Laws 1891, page 132.

In support of his motion for a separate trial the defendant avers, ''that he did not participate in nor did he have any part in any agreement, confederation, conspiracy or combination to do the acts or things charged in the information. * * * That it will be impossible for the prosecution to establish a conspiracy between any of the defendants until the various acts of the defendants St. Clair, Duncan and Smith in Pueblo county are attempted to be proven or are proven; that said evidence is not material or competent until a conspiracy is shown, and this defendant says that he cannot be connected in any way with the acts of the said defendants in so far as the county of Pueblo is concerned, nor in so far as the county of Arapahoe is concerned.'' Further, ''that there is evidence, to wit, evidence of the acts and doings of said St. Clair, George H. Smith and Con. S. Duncan, and evidence which relates to acts prior to the consummation of the alleged conspiracy, if the same was ever consummated, which might be competent evidence against the other defendants, or might not, as to the formation of a conspiracy, but which could under no circumstances be competent against this defendant.''

The statute provides that in cases where there is material and admissible evidence against one defendant and such evidence would be inadmissible as to the other defendants if tried alone, that the defendant against whom the evidence is material and admissible, shall be tried separately. The character of the evidence as stated in the affidavit is not that mentioned in the statute. The facts which the defendant alleges the prosecution expected to establish are facts which, he alleges, would *not* be admissible against him, but would be admissible in evidence

against the other defendants; whereas, the statute requires a severance when there is evidence admissible against the defendant seeking a severance and inadmissible against the other defendants. But, even if we were to construe the statute as applicable to the facts which existed in this case, the defendant has failed to show that he was entitled to a separate trial, because the facts which he sets forth in his affidavit are admissible against him whenever the fact of a conspiracy is shown, and the acts and declarations of the conspirators, or of any of them, in furtherance of the conspiracy, are admissible in evidence against not only the persons who originally conspired together, but against any person who joined with them in the consummation or attempt at consummation of the conspiracy. We think, therefore, that the court did not err in refusing to grant the defendant a separate trial.

We find no error in the action of the court in excusing the jurors. A jury was not sworn to try the case, but jurors were examined and passed for cause by the respective parties, and before they were accepted by either side, the court, by reason of the granting of a continuance for a period of nearly thirty days, discharged the jurors from further attendance upon the court. It appears from the record that on the first occasion, when a continuance was granted at the request of the defendant, no time elapsed between the direction of the court first made discharging the jury and the order recalling them and excusing them from further attendance upon the court until the day to which the case had been continued. The court has a discretion as to discharging jurors from time to time as the business of the court may permit, and we cannot say from this record that the court abused its discretion in this respect or that its exercise was prejudicial to the defendants.

The alleged error upon which counsel mainly rely is that concerning the peremptory challenges by the people. It is argued with great force that under a rule requiring such challenges to be made singly and alternately, first by the people and then by the defendants, it is manifestly unjust to permit the people to waive, from time to time, the exercise of a peremptory challenge as to the jurors then in the box, without regarding such waiver as exhausting one of their peremptory challenges. The result sometimes being, as in this case, that the people may exercise several peremptory challenges after the defendants have exhausted theirs. Of course it may as often happen that the defendants may exercise peremptory challenges after the people have exhausted theirs, and it is argued that the law is that the failure by either party to exercise a peremptory challenge in turn is a waiver of one peremptory challenge.

Under the common-law method of empaneling a jury, by swearing each juror as he is passed for cause and not challenged peremptorily, there was no waiver of peremptory challenges except that they could not be exercised as to the jurors already sworn, and we cannot see on what principle it can be held, in the absence of a statute or rule of court to that effect, that declining to exercise a peremptory challenge as to twelve jurors at once is a waiver of one peremptory challenge, when the passing of them singly would not have been.

In *State v. Pierce,* 8 Iowa 231, a case in which the state was entitled to three peremptory challenges and the defendant to six, a ruling of the court below that in empaneling the jury the state should first exercise one peremptory challenge and then the defendant should exercise two, and that a failure to so challenge would be a waiver of the challenges, was sustained as a fair and equitable exercise of the dis-

cretion of the court. The court saying: "A rule which would permit the defendant to reserve all his challenges, until the state had exhausted all those allowed to it, finds no warrant certainly either in the letter or spirit of our law, and has neither necessity nor fairness to recommend it." We know of no other case that goes quite so far. It is a common practice to require alternate challenges, and to require the defendant to exercise several peremptory challenges before the state is again called upon to exercise one, where the defendant has several times as many challenges as the state has; but the cases do not hold that the trial courts may enforce this rule of alternate challenges by declaring that the failure to challenge in turn shall be regarded as the waiver of the right of peremptory challenge as to one or more of the jurors subsequently called.

In *Schumaker v. State*, 5 Wis. 324, a case in which the state had six peremptory challenges and the defendant twenty-four, the court below required the defendant to exercise four peremptory challenges at each turn, or waive four. This was held to be error, since it practically deprived the defendant of a right of peremptory challenge secured to him by statute.

In *Rounds et al. v. State*, 57 Wis. 45, the state had twelve peremptory challenges and the defendants forty-eight. After the state had challenged peremptorily seven jurors and passed the list eight times, it challenged a juror, and after it had challenged eight and passed twelve times, it challenged another, against the objections of the defendants. The court says: "The court sustained the peremptory challenge of the two jurors, Beyer and Hill, by the state, against the objection of the plaintiffs in error. The objection is based upon the assumption that the peremptory challenges of the state had already been

exhausted. By the rule admitted to be correct by the learned counsel of the plaintiffs in error, and sanctioned in the case of *Schumaker v. State,* 5 Wis. 324, the state and the defendants have the right of alternate challenge, and if it is not exercised in full, it is not thereby waived or lost. In this case the two defendants had each twenty-four challenges, making in all forty-eight. According to this rule the state could challenge one juror and the two defendants four, and the state was not bound to challenge until after such four challenges by the defendants. This being so, the state had not lost their right to challenge these two jurors, as two of its twelve challenges allowed by law."

'In *Koch v. State,* 32 Ohio St. 352, the syllabus is: "A defendant in a criminal case is entitled to two peremptory challenges. Having thus challenged one of a special venire and passed his second challenge, the special venire was exhausted and a new juryman called. Defendant then claimed the right to a second peremptory challenge, which was refused. This was held error."

In *United States v. Dauber,* 17 Fed. Rep. 793, each party was entitled to three challenges. The district attorney had challenged once and passed twice when the defendant exercised his third peremptory challenge. A new juror being called, the district attorney challenged that juror, and the challenge was allowed. The court says: "This court must be controlled by section 819 of the Revised Statutes of the United States, and that section declares absolutely that each party in such a case as this shall be entitled to three peremptory challenges, and when the calling of a new juror was necessitated by the challenge of either party, I think the other had a right of challenge of such juror, although he may have previously passed the list, provided he had not already exhaust-

ed his three peremptory challenges. It is argued that by the course pursued the district attorney in effect was enabled to exercise his right as to 13 jurors, while the defendant was limited in the exercise of his right to 12; but the calling of the thirteenth juror was made necessary by the defendant's last and third peremptory challenge, and the court cannot perceive any good reason for denying to the prosecutor the right to challenge that juror, although he had declared himself content with the jury as it previously stood, when the fact was that he had exercised his right of peremptory challenge but once before the thirteenth juror was called. In other words, I do not think, under the practice in this court and the statutes of the United States, the prosecutor waived his right to make the peremptory challenge objected to by previously passing the list as he did without challenge."

We are therefore clearly of opinion that the court did not err in permitting the exercise of peremptory challenges by the district attorney as to jurors called into the box after the last waiver of challenge by him.

The objection to the third instruction is that inasmuch as Smith had pleaded guilty to the third count of the information and the other counts had been dismissed as to him by the district attorney, Smith stood acquitted of the conspiracy charged in the first and second counts, and that the reference by the court to the status of Smith was irrelevant and improper and suggested to the minds of the jurors that Smith was not upon trial because he had pleaded guilty. The objection is not well taken, nor was the instruction prejudicial to the defendant. The jury found that all three of the defendants were guilty of a conspiracy, and of the conspiracy charged in the information. The argument of counsel that the jury

may have predicated their verdict upon a finding that the plaintiff in error was guilty of a conspiracy with Smith alone is not sound, and we are not required to determine whether such verdict could be sustained.

The proof shows that the plaintiff in error was engaged in the business of printing; that he agreed with some of the other defendants to print a large number of blank pay checks purporting to be pay checks of The Colorado Fuel and Iron Company, knowing at the time that they were to be used in the manner charged in the information; that he aided in the selection of paper, type, rubber stamps and other materials, for the purpose of producing a *fac simile* of the pay checks then in use by that company, and printed several hundred of the counterfeit checks. A large number of these checks were found in the possession of the other defendants, with names and amounts inserted and bearing the forged signatures of the paymaster and the cashier of The Colorado Fuel and Iron Company. There was an abundance of evidence to establish the fact that the plaintiff in error did conspire with the other defendants to commit the offense charged in the information, and as there is no error shown to have been committed in the trial of the cause the judgment will be affirmed.

*Affirmed.*