No. 12,528.

GARCIA *v.* THE PEOPLE.
(295 Pac. 491)

Decided January 12, 1931.

Mr. A. B. Crosswhite, for plaintiff in error.

Mr. Robert E. Winbourn, Attorney General, Mr. E. J. Plunkett, Assistant, for the people.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Pauline Garcia, plaintiff in error, hereinafter referred to as defendant, was tried with Jesus Costillo upon an information charging her and Costillo jointly with feloniously receiving stolen goods. The jury returned its verdict finding both defendants guilty as charged. Defendant filed her motion for a new trial, which was denied, and she was thereupon adjudged guilty and sentenced to a term of not less than three nor more than four years in the penitentiary. To review this judgment, she prosecutes this writ, assigning errors, which, for the purpose of discussion, may be classified: (1) Refusal to grant separate trial as provided in section 7097, C. L. 1921; and (2) insufficiency of the evidence to support the information.

The charging portion of the information, as amended, reads: "That Pauline Garcia and Jesus Costillo, * * * did feloniously receive * * * two black coats and eight dresses, of the value of approximately Three Hundred Dollars, personal property of Guy L. Murphy and Alice M. Murphy, a co-partnership engaged in business under the firm name of the Del-Mar Millinery, * * * then and there well knowing that the said property had been so feloniously stolen, * * *."

The court denied the unverified motion for a separate trial filed by defendant's attorney under the provisions of section 7079, C. L. 1921, in which motion was stated: "That there is certain evidence in this case which does not relate to the reputation of this defendant, and which would be material and admissible against this defendant

if tried jointly with the other defendant herein, but which evidence would be immaterial and inadmissible as to this defendant, if tried alone; that said evidence relates to the eight dresses mentioned in the information filed against said parties, regarding which property this defendant is not concerned or connected in any manner; that the only property mentioned in said information that affects or relates to this defendant is the two black coats; that if said defendants are tried jointly, during the course of the trial thereof, the evidence as to the said eight dresses would necessarily reach the ears of the jury, all of which would be prejudicial to the rights and interests of this defendant and would prevent her from having a fair and impartial trial.''

▆ 1. The defendant's motion for a separate trial contained no statement of facts from which a court might determine whether there was evidence against her co-defendant, which was immaterial and inadmissible as against her, and the admission of which would be prejudicial to the defendant. The motion was unverified, not supported by affidavit, and did not refer to any source from which the facts might be obtained.

In *Davis v. People,* 22 Colo. 1; 4, 43 Pac. 122, it was held that a motion for a separate trial, when supported by a transcript of the evidence of a former trial in which it clearly appeared that there had been prejudicial evidence offered and received, should have been granted, and the refusal to do so was error.

In *Moore v. People,* 31 Colo. 336, 344, 73 Pac. 30, it was held that the defendant against whom the evidence was material and admissible was the joint defendant who must make the motion for a separate trial, rather than the defendant against whom the evidence was immaterial and inadmissible. This rule is expressly disapproved in *Cook v. People,* 56 Colo. 477, 482, et seq., 138 Pac. 756.

In *Cook v. People, supra,* the only question with reference to motion for separate trial determined, was who should make the motion; the one against whom the evi-

dence was admissible and material or the one against whom the evidence was immaterial and inadmissible, and it was therein determined that the latter was the proper party to make the motion, and the rule in the Moore case, supra, was disapproved. The question of the sufficiency of the motion was not involved, however it was said: "We do not wish it understood that we approve the form of the motion or the showing made in support thereof, as a precedent in all cases. There was no objection made on these grounds, either here or in the court below. The severance was denied below and the refusal to grant the motion is justified here by the attorney general, on the ground that under our construction of the statute in the *Moore* case, Cook could not make the motion. We think the case made, both here and in the court below, sufficiently admits the existence of evidence to sustain the motion which was denied, not because it was unsupported, but because it was erroneously assumed that Cook could not make it. The trial demonstrated that the motion was well taken, * * *." In the Cook case, supra, we adhered to the rule announced in the Davis case, supra.

In *Stone v. People,* 71 Colo. 162, 167, 204 Pac. 897, it was expressly held that, because the record did not disclose the admission of prejudicial evidence, it was unnecessary to pass upon the sufficiency of the motion for a separate trial.

In *Sarno v. People,* 74 Colo. 531, 233 Pac. 41, it was held that the record disclosed no prejudicial evidence justifying a separate trial, and, therefore, there was no error in denying the motion for a severance.

In *Robinson v. People,* 76 Colo. 416, 419, 232 Pac. 672, when the sufficiency of the motion for a separate trial was directly before this court, it was said:

"The plaintiff in error's motion for a separate trial did not contain any other allegations concerning the evidence than those which are substantially in the language of the statute. It did not state what the evidence would

be. No affidavit was offered or attached in support of the motion. The question to be now determined is whether the court erred in denying the motion under the circumstances.

"In *Cook v. People,* 56 Colo. 477, 138 Pac. 756, there is found in the dissenting opinion the following apt language: 'It is true that under our statute a separate trial should be granted where it is made to appear that a defendant will be prejudiced on a joint trial by the admission of evidence which is not admissible as against him but which is competent as against his co-defendant. But this must be made to appear in support of a motion for a severance, not by merely stating that at the trial evidence will be admitted which is not competent as against the moving defendant but is competent against his co-defendant, but the evidence which it is claimed is incompetent must be set out so that the court will be given the opportunity to determine whether or not the defendant moving for a severance may be prejudiced by testimony competent as to his co-defendant but not admissible as to him. Such has been the recognized practice in this jurisdiction. *Davis v. People,* 22 Colo. 1, 43 Pac. 122; *Moore v. People,* 31 Colo. 336, 73 Pac. 30.

" 'In what other manner can the court be advised whether the severance should be granted?'

"The language above quoted does not conflict with the decision announced in the majority opinion in that case. The decision simply was that Cook, and not his co-defendant, was the proper party to make the motion, under the circumstances there discussed. No Colorado case holds contrary to the quotation above set out. Moreover, the authorities support the view there taken. In 16 C. J. 788, it is stated in the text that 'as a rule the application for a severance must be supported by an affidavit which definitely shows good cause therefor'."

In *White v. People,* 79 Colo. 261, 264, 245 Pac. 349, we took occasion to expressly approve the rule announced in the Robinson case, supra.

The Robinson case, supra, outlines a rule of procedure necessary to be followed, if we are to be called upon to determine error assigned in denying a motion for a separate trial. This decision is well reasoned, and prescribed the only safe rule to be followed, and is the only logical and reasonable rule which enables a trial court to intelligently pass upon this motion. The motion in the instant case does not come within the requirements of the Robinson case, supra, and there was no error in denying the motion.

2. The information charges the defendant and Costillo jointly with the crime of feloniously receiving "two black coats and eight dresses, of the value of approximately Three Hundred Dollars,". The verdict found "the defendants Pauline Garcia and Jesus Cos-tillo, alias Joe Alvarez, guilty, in the manner and form charged in the information, and further find that the value of the property described therein is $200.00." The evidence offered by the people may be summarized as follows: About May 25, 1929, Costillo, accompanied by defendant and her daughter, rented a cabin in a section of Grand Junction quite remote from the residence of defendant, and paid a month's rent thereon; defendant and her daughter were seen at the rented cabin the morning following the rental, and were seen in the vicinity once thereafter; about two weeks after the cabin was rented the Del-Mar Millinery was burglarized, and a part of the loot consisted of two black coats and eight dresses, the property described in the information; prior to the last of June, defendant and her daughter were in the Del-Mar Millinery wearing the two black coats mentioned in the information; during the last days of June, 1929, the owner of the rented cabin discovered some dresses and other property in the cabin, and reported the matter to the police, who, upon investigation, found the eight dresses; the officers thereafter watched the house, and, one night after they had seen Costillo unlock the door and enter, they placed him under arrest and took the

eight dresses; one of the officers found defendant and her daughter in an automobile parked in the street near the cabin, and immediately arrested them, and the three were taken to the police station, where, upon interrogation, defendant told conflicting stories; thereafter the officers went to the residence of defendant and found the two black coats described in the information. Costillo, at the time of his arrest, stated: "Well, it is just too damn bad for me." At the conclusion of the people's evidence in chief, defendant moved to require the district attorney to elect as to which of the defendants he desired to proceed against, as it appeared from the evidence that there was a misjoinder of parties defendant. This motion was denied, and exception saved.

It is contended by defendant that, in order to sustain the judgment of conviction, it was necessary for the people to prove, in addition to the other necessary elements, in an action of this nature, that the receipt of the goods was joint, and inasmuch as no such proof was offered, the judgment must be reversed.

3 Bishop's New Criminal Procedure (2d Ed.), page 1856, section 988, states the law, with reference to joint defendants in a charge of receiving stolen goods, to be: "If two persons, in a single count, are charged, not under a separaliter, with receiving stolen goods, one may be convicted and the other acquitted, but not both convicted unless the receiving was joint. And after evidence of a receiving by one, if that tendered as to the other relates to a different transaction, counsel should object, and the court will either exclude it or compel the prosecutor to elect on which transaction, or against which defendant, he will ask for a verdict. For one, not both, may be convicted. Or judgment may be given against the one who received first in the order of time."

2 Wharton's Criminal Procedure, Tenth Edition (Kerr), page 1631, section 1180, states the law to be: "Two or more persons may be joined as defendants in an indictment or information charging receiving stolen

goods, and one may be convicted and the other acquitted, but both cannot be convicted unless there is a charge and a showing that the receiving was joint, except where the charge in the indictment is under what was known at the common law as a 'separaliter,'—separately, a charge of separate acting—in which case, it seems, a verdict may be rendered against the defendant who first received in the order of time.''

In Wharton's Criminal Law, Eleventh Edition, page 1453, section 1235, the law is stated to be: ''If two defendants be indicted jointly for receiving, a joint act of receiving must be proved in order to convict both.''

It is singular and interesting to note that the texts above, as well as others upon the same subject, refer to *Rex v. Messingham,* 1 Moody's Crown Cases, 257, as the basis of their decision, and this case is further cited as an authority, and has been followed by many of our state courts, having before them the question of joint indictments or informations for receiving stolen goods.

In Rex-Messingham, supra, the son of Mary Messingham had received some stolen meat from a man who stated that he was leaving it for Mary Messingham, the mother. When the mother returned home, the meat was delivered to her by the son, and the information filed charged the mother and the son with receiving the stolen meat, knowing it to have been stolen. In determining that the judgment was wrong, so far as the conviction of Mary Messingham was concerned, it is stated: ''The case was considered at a meeting of all the judges (except Park, J.) in Easter term, 1830; and they were unanimous that, on the joint charge, it was necessary to prove a joint receipt; and as the mother was absent when the son received, it was a separate receipt by him.''

In *People v. Stein,* 1 Parker's Criminal Reports (N. Y.), 202, 210, where the defendant, with others, was charged with receiving stolen goods, and all were convicted, it was contended that, in an indictment against

all defendants, a joint act of receiving must be proven against all, in order to convict all, and it was there said:

"The court below was asked to charge that the indictment being joint against all the defendants, a joint act must be proved against all in order to convict all. The court refused so to charge and the defendants excepted.

"This proposition standing alone and unexplained was undoubtedly correct; but it must be taken and considered as qualified by what the court did charge, viz.: that if the jury believed that any one of the defendants was guilty of receiving, etc., he could be convicted under the indictment; and that all whom the jury believed to have so received the property could be convicted upon the indictment and under the evidence in the case, though the receiving was at different times and places and although all the defendants were not present.

"The whole taken together shows clearly that the question made was, whether, to convict all, it was necessary that all should be present at one time and place, engaged in the receiving. And the court rightly held, that all whom the jury believed to have so received the property, that is, all who were proved to have confederated in the transaction, could be convicted, * * *. The question of the confederacy of the defendants was thus fairly submitted to the jury, and if that was established, those absent, as well as those present, were equally guilty."

It is to be presumed that, had not the question of confederation, commonly called conspiracy, been in the case, the court would have followed, as it was urged to do, the case of *Rex v. Messingham, supra,* which was cited by defendant in error, and upon which reliance was placed for a reversal.

In *United States v. Le Fanti,* 255 Fed. 210, 214, where the defendants were jointly indicted for receiving stolen goods, it is said: "It has been several times decided that, where two or more are jointly indicted for having received stolen goods, one may be acquitted and the other convicted; and when the evidence demonstrates that the

receipt was not joint, but separate and successive, the first receiver may be convicted, and the other acquitted.''

In *Faunce v. People,* 51 Ill. 311, 315, it appears that a negro thief approached defendant's business partner with a proposition to sell her some stolen goods, which she declined to purchase until she had communicated with defendant. Upon defendant's return to his place of business, viz., a pawnshop, he was informed of the negro's visit, and his business, and when the negro subsequently returned, the defendant agreed to purchase, under certain conditions. The first call resulted in the negro leaving the stolen property in defendant's place of business, from where it was subsequently delivered by defendant to the police. The indictment charged the partners jointly, and it was urged that, inasmuch as the receiving was not joint, the defendant could not be convicted. In disposing of this contention, the court apparently places great weight upon the business relationship, saying: ''It is next urged that defendants were indicted for a joint receipt of the goods, and the evidence shows that the goods were left with Mrs. Stevens when plaintiff in error was not present. It is urged that proof that one received the goods in the absence of the other, and afterwards delivered them to the other, will not warrant a conviction for a joint receipt of the goods; that successive receivers are all separately guilty. Such may be the law, but in this case plaintiff in error communicated directly with the thief, and after agreeing to purchase the goods if the detectives did not interfere, he retained the goods. His communication with the thief was as direct as that of his co-defendant, and was in pursuance of what his co-defendant had said to the thief. We are unable to see that the authorities referred to by plaintiff in error should govern this case. In those cases the parties did not appear to be partners in business and acting for their mutual gain, but to have acted separately and not jointly, nor did all who were accused communicate directly with the thief.''

In *State v. Smith,* 37 Mo. 58, 66, the court, after reviewing the decisions of several courts regarding joint informations for receiving stolen goods, announces this rule of law: "The rule to be deduced from these cases seems to be that when several are charged with jointly receiving stolen goods, to convict all or any two or more of them a joint receipt must be proven."

In *Sanderson v. Commonwealth,* 11 Ky. Law Reporter, 341, 342, 12 S. W. 136, where the joint defendants were partners, and were convicted upon a joint indictment for feloniously receiving stolen goods, the conviction was upheld on the theory of partnership and knowledge, the court saying:

"The testimony in this case conduces to show that one Wilkerson & England took the hogshead of tobacco at the procurement of Brisendine, the partner of Sanderson. The two were partners in handling this product, and that the tobacco of Matthews found its way into their possession is a fact clearly established. Counsel for Sanderson maintains that as the proof shows Brisendine received the stolen property, the fact that Sanderson, who was his partner, afterwards took charge of it, knowing it to have been stolen, does not constitute guilt on the part of Sanderson. We cannot concur in such a conclusion.

"These men were partners and, assuming that Sanderson had no knowledge of the original taking by Wilkerson & England, but that his partner, Brisendine, received the property from them, knowing it to have been stolen, and Sanderson, with a full knowledge of that fact, assumed control of the stolen property, with a view of depriving the owner of its use, it is plain that both would be guilty of receiving the stolen goods, and a conviction must necessarily follow. * * *

"While one partner cannot commit crime for which his co-partner, who is innocent, can be held criminally responsible, we cannot well see why one partner may not be guilty of receiving stolen goods where his co-partner has first received them with a guilty knowledge, and then

they are controlled and used by both, with the guilty design and purpose on the part of both to deprive the owner of his property."

See also: *Wheeler v. State,* 76 Miss. 265, 24 So. 310; 24 A. & E. Enc. of Law (2d Ed.) 49, §6 (b); Roscoe's Criminal Evidence, Vol. II, page 1137; Russell on Crimes, Vol. II, page 426; McClain on Criminal Law, Vol. 1, §722; *Chatterton v. People,* 15 Abb. Pract. (N. Y.) 147; *Commonwealth v. Slate,* 11 Gray's Reports (Mass.), 60, 63.

All the authorities support the rule that, to sustain a joint charge of feloniously receiving stolen goods, there must be a joint receipt at one and the same time, and a receipt by one of the parties at one time and place, and a subsequent receipt by another, at another time and place, will not support the joint charge, but will only justify the conviction of the one who first received them. There may be an exception in cases of partnerships or other like confidential relations, but ordinarily the rule announced above is the law.

In the case at bar, when the people had rested their case in chief, the motion to elect should have been granted, and it was error to have refused to do so. The evidence herein utterly fails to establish a joint receipt of stolen goods and, therefore, the conviction of the defendant must be set aside.

Judgment reversed.

MR. JUSTICE BUTLER not participating.