## No. 16,516.

### BROWN *v.* THE PEOPLE.
(238 P. [2d] 847)

Decided October 29, 1951.  Rehearing denied November 19, 1951.

Mr. Isaac Mellman, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Norman H. Comstock, Assistant, for the people.

*En Banc.*

Mr. Justice Clark delivered the opinion of the court.

Plaintiff in error will herein be designated as defendant or Brown.

The information, as first filed on November 23, 1948, charged jointly the defendant, Jack Bernard, and Roscoe Sexton with the crime of aggravated robbery at and within the City and County of Denver on the 19th day of October, 1948. On this charge all three were duly arraigned on November 27, 1948, and entered separate pleas of not guilty. January 18, 1949, upon motion and by leave of court, ammendment to the information was had by adding thereto second and third counts charging two former convictions of felonies by Bernard; fourth, fifth and sixth counts setting forth three former convictions of felonies by Sexton; and seventh, eighth and ninth counts of three former convictions of felonies by defendant Brown. February 4, 1949, upon motion and further leave of court, an additional amendment to the information was made by adding thereto a tenth count, wherein Bernard was charged with still another former conviction of felony.

Following adverse rulings on the separate motions of defendants to strike counts two to ten, inclusive, as same applied to them, respectively, all three were rearraigned on March 7, 1949, whereupon each defendant, with respect to such of the additional counts as pertained to

him, stood mute, and pleas of not guilty as charged, upon each and all of said counts were entered by direction of the court.

April 20, 1949, this defendant, and on the following day Bernard and Sexton, filed separate motions, substantially identical in form, seeking separation for trial. None of said motions were in any way directed to the substantive charge of aggravated robbery set forth in the first count of the information, but in form applied only to those counts that may properly be, and herein are, referred to as the habitual criminal counts two to ten, inclusive. It was recited in the motions that in event of conviction on the substantive charge, the habitual criminal counts all would have to be submitted to the same jury, and that this could not be done without prejudice to each respective defendant, if all were presented together and without separation for trial. April 24, 1949, following arguments thereon, all of said motions were denied.

Trial of the three defendants jointly began on the substantive charge contained in the first count of the information on April 26, and was concluded April 28th, 1949, resulting in separate verdicts of the jury finding each of the defendants guilty of aggravated robbery as charged. Thereupon the court directed that, with respect to the habitual criminal counts, the trial should further proceed separately as to each defendant upon the counts pertaining to such defendant only, before the same jury, and as a safe, though unnecessary, precaution had the jury resworn. Also, the privilege of further voir dire examination of or exercise of challenge of jurors, or any thereof, was denied by the court.

Proceeding in the manner aforesaid, on the following day, the hearings were resumed before the same jury taking each defendant separately upon the habitual criminal counts pertaining to him alone. These proceedings, in each instance, resulted in verdicts finding each defendant identical to the person referred to in each of the

three counts pertaining to the said defendants respectively. Thereafter, and following the filing and denial of motions for new trial, judgments imposing life sentences upon each of said defendants were entered, to review which, separate writs of error were sued out in this court based, however, by leave first had, on one consolidated and complete record. Thus far, our remarks include the general situation appertaining at the time of, and before, trial as to all three defendants. Our further comments will be confined to the case of Brown.

We shall not undertake to treat separately each of the twenty-six alleged errors here assigned, but shall attempt to cover all thereof in the following general discussion in order of progression of trial proceedings.

■ 1. Any uncertainty previously existing as to the right of the district attorney to file amendments to an information in a case of the nature of this proceeding, was definitely set at rest by our decision in *Wolff v. People,* 123 Colo. 487, 230 P. (2d) 581, 585, where we said: "The amendments were made long before the trial of the case and the defendant was not in any manner prejudiced by the changes permitted in the wording of said counts." Such was the situation here as to the time element involved, and no prejudice could have resulted from the amendment to the information by the inclusion of pertinent additional counts where ample time for preparation for trial was afforded. The factual situation in *Smalley v. People,* 96 Colo. 361, 43 P. (2d) 385, is so completely different from the facts in the matter now before us as to render the decision therein wholly inapplicable to the present proceeding.

■ 2. Did the refusal of the trial court to grant defendant's motion for separate trial constitute error requiring reversal of the judgment? Definitely, the answer is in the negative. Throughout his argument relating to assignments of error directed to the receipt of evidence over defendant's objections, hereinafter further discussed, counsel for defendant reiterates, that because

thereof, there appears other and further reasons why the court should have ordered severance, and he contends that same constitutes error. With respect to all such matters the trial court, at the time of argument upon the motion for severance, was wholly unadvised. They were not set forth in the motion, nor in any affidavit thereto attached. No showing thereon was made in any manner, the motion being in language similar to that of the statute (§484, c. 48, '35 C.S.A.), "that there is evidence, which does not relate to the reputation of the other defendants, which will be admissible as to such defendants if tried separately, but would be inadmissible as to this defendant if tried alone." As to all such items, the application for severance was manifestly inadequate and insufficient and no error resulted from its denial. *Robinson v. People,* 76 Colo. 416, 419, 232 Pac. 672; *Garcia v. People,* 88 Colo. 267, 295 Pac. 491; *Kolkman v. People,* 89 Colo. 8, 12, 300 Pac. 575.

From a study of the record it is clear that when the motion for severance was prepared and filed, as well as when argued before the trial court, reliance was had upon the circumstance that in the event of conviction of all of the defendants upon the principal charge, further proceedings upon the habitual criminal counts necessarily would have to be before the same jury. '45 S. L., page 311, chapter 114, section 3. Such has now become the settled and well-established procedure, the history of its background and development being fully detailed in *Wolff v. People, supra.* Had the court proceeded on the habitual criminal counts by hearing all nine thereof against all three defendants at one and the same time, commingled and together, it is certain that defendant would be here vigorously alleging error on that account. That was the very situation that counsel by motion sought to avoid. It was that which, following conviction of defendants on the principal charge, the court, by adopting the procedure above stated, did avoid. Therefore, the point of the whole objection comes down to the

one question: Did reversible error result from determination of identity on the habitual criminal counts as to all three defendants before the same jury, notwithstanding separation on these issues? The answer is in the negative. To hold otherwise would be but to belittle the whole jury system and unfairly minimize not only the intelligence, but likewise the integrity of regularly selected and duly sworn jurors. Jurors, as the triers of facts, are as much a part of the court as is the judge, and there is no more reason to hold a jury disqualified to fully determine the several issues of a case, when separately presented to it under proper instructions, than to disqualify the judge from presiding throughout the entire proceeding.

Furthermore, it must be borne in mind that proceedings before the jury on the habitual criminal counts are not in determination of whether defendant is or is not guilty of the crime, but go only to issues pertaining to identity of the defendant as being the individual named in such count as one who was previously convicted of a felony. *Wright v. People,* 116 Colo. 306, 181 P. (2d) 447. In the light of the purpose to be accomplished, the plan of operation adopted by the trial court, in presenting to the jury the charges pertaining to each defendant separately, was manifestly proper and meets with our approval.

3. On various occasions throughout the course of the trial the district attorney offered evidence indicating flight, escape and attempted escape, but all on the part of either one or both Bernard and Sexton. Proper and prompt objection to the receipt of such testimony was made on behalf of defendant Brown, and, in each instance, the court carefully advised and cautioned the jury that such evidence did not apply to this defendant, and should not be considered by the jury in connection with him. Furthermore, in its final written instructions the court included one on escape and attempted escape, wherein it specifically directed the jury not to "consider

any such evidence against any defendant who had not, under the evidence herein, escaped or attempted to escape." Assuming, as we must, that the jury was comprised of persons of at least normal and ordinary intelligence, it is inconceivable how, under such cautionary direction by the court, it possibly could have been misled or how prejudice could have in any manner resulted to this defendant. Our conclusion is that there was none.

■ 4. It is contended on behalf of defendant that the verdicts of the jury on identity under counts 7, 8 and 9 are insufficiently supported by competent, relevant and material evidence. Attack in this behalf is directed against people's exhibits C2, C3, C4 and C5, defendant's objections to the receipt thereof, at the time of trial and now, being that they were not properly authenticated. Section 2 of the 1945 act (Chapter 114, '45 S. L., pages 310, 311) provides: "Section 2. On any trial under the provisions of this act, a duly authenticated copy of the record of former convictions and judgments of any court of record for any of said crimes against the party indicted or informed against shall be prima facie evidence of such convictions and may be used in evidence against such party." There is no definition as to what is intended by the term "duly authenticated." In Webster's International Dictionary the word "authenticated" is defined as "to render authentic; to give authority to, by the proof, attestation, or formalities required by law, or sufficient to entitle to credit." Defendant's counsel calls our attention to rule 44 of the Colorado Rules of Civil Procedure, insisting that in a criminal case the standards set forth by the civil rules at least should be met. An authenticated copy is by said rule defined as one: " * * * attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody. If the office in which the record is kept is within the United States or within a territory or possession subject to the dominion of the United States, the certificate may be made by a

judge of a court of record of the district or political sub-
division in which the record is kept, authenticated by the
seal of the court, or may be made by any public officer
having a seal of office and having official duties in the
district or political subdivision in which the record is
kept, authenticated by the seal of his office."

A federal statute in this connection provides that:
"The records and judicial proceedings of any court of
any such state * * *, or copies thereof, shall be proved
or admitted in other courts within the United States and
its Territories and Possessions by the attestation of the
clerk and seal of the court annexed, if a seal exists, to-
gether with a certificate of a judge of the court that the
said attestation is in proper form." U.S.C.A., Title 28,
section 1738.

The exhibits C2, C3 and C4 are certified copies of final
judgments entered in three separate proceedings in the
circuit court of Jackson county, in the State of Missouri,
in each of which the defendant here was convicted and
sentenced to the penitentiary of that state. Each thereof
is certified as a full, true and complete copy of the judg-
ment and sentence of the court in each of said cases and
is authenticated by the clerk of that court under his sig-
nature and the seal thereof, accompanied by the certifi-
cate of the judge of said court to the effect that the indi-
vidual who signed as clerk is the clerk of said court; that
he is the custodian of the records and papers thereof;
that the said attestation is in due form and according to
law; and then the further certificate by the clerk that the
judge who so certified is a duly elected, commissioned,
and qualified judge of said circuit court. All of said cer-
tifications are impressed with the seal of said court.
These clearly are amply and properly certified public
records and come within all definitions of due authenti-
cation.

Exhibit C5 contains certain records from the Missouri
state penitentiary, including photographs and fingerprint
records of the man committed to said institution under

the judgments shown in exhibits C2, C3 and C4. These documents are certified as true and correct copies by the warden of the penitentiary, who states in his certificate that he is the legal custodian of said records and thereunto is attached the certificate of the secretary of state of the State of Missouri who likewise certifies that the warden is the legal keeper and custodian of the records in the Missouri state penitentiary, and that the warden's certificate is in due form and that his signature thereto is genuine. The warden's certificate is not impressed by a seal, notwithstanding that it developed in the course of the hearing that the penitentiary does have an official seal. Objection thereto was made on this account, but such objection, if it be in anywise sufficient, is entirely cured by the additional certificate of the secretary of state whose signature is accompanied by the impression of the great seal of the State of Missouri. We conclude that exhibit C5 was properly admitted in evidence.

Testimony was offered and reecived to the effect that under the laws of Missouri only persons convicted of felony are received at the state penitentiary. The identity of this defendant with the man three times received at the Missouri state penitentiary was further established by the testimony of fingerprint experts who testified that the fingerprints of the defendant in this case are identical with those contained in the records of the state penitentiary of Missouri in all three of the cases hereinabove to which reference is made. It must be borne in mind that identity is the only question involved in proceedings of this nature. The statute provides that the authenticated copy of former convictions and judgments shall be "prima facie evidence of such convictions." The defendant did not take the stand in his own behalf to deny or otherwise explain any of these facts or circumstances. The verdicts of the jury are amply supported by admissible, competent, relevant and material evidence.

█ 5. Exception to the ruling of the trial court, refusing defendant's counsel permission to further question

the jury on voir dire examination and to exercise peremptory challenges following the completion of the trial on the principal charge and before the commencement of the hearings on the habitual criminal counts, is assigned as error. This question was before us in the case of *Wolff v. People, supra,* and was there fully discussed and determined in a manner adverse to the contentions of defendant's counsel here. Nothing herein has been called to our attention that would in any way justify modification of the ruling laid down by us in the Wolff case, and therefore, we decline to undertake amendment thereto or modification thereof in any respect. What we therein said concerning this question constitutes a complete answer to this assignment.

The fact that we have not herein discussed certain other matters contained in defendant's assignment of alleged errors, does not indicate that we have not given all such, full and careful attention. The only reason we do not discuss them further is because they are not of sufficient merit to justify the lengthening of this opinion.

The judgment of the trial court is affirmed.

MR. JUSTICE KNAUSS not participating.