[No. 7865]

## Cook v. The People.

1. Criminal Law—*Several Defendants—Separate Trials*—Where two are indicted jointly, and there is evidence not relating to the reputation, admissible as against one of them, but inadmissible as against the other, the one against whom such evidence is inadmissible is entitled to a separate trial, as of right (Rev. Stat. sec. 1981).

But the separation must be requested by the party against whom such evidence is inadmissible. *Moore v. People,* 31 Colo. 345, explained and distinguished.

2. ——*Motion for Severance—Sufficiency—Waiver*—Two were indicted jointly for murder. One moved for a separate trial. The motion stated "there is evidence not relating to the reputation of this defendant, which would be material and admissible as to this defendant if tried jointly with the said S., but * * * immaterial and inadmissible as to this defendant if tried alone," not in any manner giving even the substance of the evidence in question. The form of the motion was not approved, but no objection to its sufficiency being made below, and the truth of the allegations thereof appearing by the record, the denial of the motion was held fatal error. Gabbert, J., and Bailey, J., dissented.

3. ——*Evidence—Confession of one of Several Tried Jointly,* is admissible as against him, but not, as to a co-defendant who has not expressly or impliedly admitted its truth.

4. ——*Admissions—Silence*—Whether silence gives consent to the

statements of another depends upon the attending circumstances. If it appears that the party did not intend to commit himself no inference of assent is to be drawn from his silence.

5. ——*Inadmissible Evidence Received Over Defendant's Objection*, is error. It is not necessary that the accused should present an instruction as to the matter, in order to avail himself of this error. Gabbert, J., and Bailey, J., dissented.

6. ——*Bill of Exceptions Construed*—Cook and Seiwald were jointly indicted for wilful murder. They employed separate counsel, and each sought to exonerate himself by accusing the other. They quarreled throughout the trial. The bill of exceptions alleged that Seiwald was "sworn and examined on behalf of the defendants." He was examined in chief by his own counsel. *Held*, that the bill of exceptions must be construed in the light of the whole record, and thus construed it must be held that Seiwald was called for himself and not for Cook.

*Error to Denver District Court.*—Hon. HUBERT L. SHATTUCK, Judge.

Messrs. DANA & BLOUNT, Mr. J. S. DICKEY, JR., and Mr. JOHN A. DEWEESE, for plaintiff in error.

Hon. FRED FARRAR, Attorney General, and Mr. FRANK C. WEST, Assistant Attorney General, for the People.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

Upon a joint information and trial of Oscar Cook and Edward Seiwald charged with murder, Cook was convicted and sentenced to be hanged. To reverse this judgment he brings the case here on error.

1. There was evidence showing that about eleven o'clock at night, March 9, 1912, two men attempted to hold up the people in, and rob the saloon of one A. J. Lloyd at Valverde in the city of Denver. In the encounter and shooting which followed, Lloyd and a patrolman named McPherson, were killed, and one of the robbers wounded. There was snow on the ground, and the night was cold. Lloyd, his wife and McPherson were

sitting around the stove in the bar room chatting, and Evans, the bar tender, was leaning against the wall, when two masked men appeared in the door with drawn revolvers. The foremost man advanced to the center of the room and commanded, "hands up." McPherson wore a citizen's overcoat buttoned over his uniform, and was shot while trying to get his gun. Several shots were exchanged before the officer fell. Lloyd, in going behind the bar for his gun, passed the other robber standing in the door, who fired upon him; the shooting became general, and McPherson and Lloyd received wounds from which they shortly thereafter died. The next day Cook and Seiwald were charged with the crime and arrested in the room of Florence Shelton in a rooming house in Denver, where they had frequently held meetings. Cook was suffering from a dangerous and recently inflicted gun shot wound in the body, and taken to the hospital in a critical condition. March 11, two days after the shooting, while Cook was in the hospital, Seiwald in his absence made a statement containing nineteen pages of typewritten matter, to the chief of police and district attorney, which was taken in shorthand by one Smith, stenographer to the chief. In this statement Seiwald attempts to exonerate himself by throwing the responsibility for the homicide on Cook, with the evident purpose of securing his own acquital. It recites their acquaintance at Leadville, how Cook followed him to Brighton, and persuaded him to come to Denver; it emphasizes the power and influence Cook acquired and held over him, which he claimed he could not resist, and tells of Cook giving him liquor and persuading him to drink, in order to entice him into crime; it recounts their exploits in Denver, their meetings at this rooming house at which Cook planned this and other robberies; it narrates conversations with Cook in which he told Seiwald of other felonious transactions and hold-ups in which he had been engaged; it tells

how Cook procured the weapons and masks used in the hold-up; and how by drink and influence he compelled Seiwald, through fear and persuasion, to go with him to the saloon that night; that it was he who stood in the door, and Cook who advanced to the center of the room and killed the two men; that when he realized the purpose, and saw what Cook had done, the power and influence over him was broken, and firing one shot in the direction of Cook he fled from the place, that being the only shot he fired, leaving the intended inference that it was he, and not the officer who wounded Cook; that he went to the saloon against his will and he took no part in the homicide. This statement was marked exhibit D. Throughout the trial Seiwald in his defense attempted to establish the guilt and responsibility of Cook for killing these men, and his own innocence, and Cook was equally emphatic in maintaining his innocence, and in his denunciations of Seiwald. If they had been friends, they at least seemed to be bitter enemies at the trial, and it would be difficult to conceive of a case where two men on trial jointly had more hostile and antagonistic defenses.

On the afternoon of the day when Seiwald's statement was made, the chief of police accompanied by his stenographer, a representative of the district attorney's office, and a couple of patrolmen visited Cook at the hospital, and the stenographer read to him Seiwald's statement. What occurred there was related on the trial by the stenographer when examined for the people by deputy district attorney McComb as follows: ''Q. Do you know the defendant Cook? A. I have seen him before. Q. Where did you see him the first time? A. I saw him in St. Joseph's hospital. Q. Who was present? A. Well, there was the chief of police and the deputy district attorney Bailey, and yourself, and myself and patrolman Carl Wilson, and I believe that was all. Q. Where was the defendant Cook at the time you have described? A.

He was lying in a cot in a room in St. Joseph's hospital. Q. Now, Mr. Smith, you may state, if you will, what you did, or what you said in the presence of Mr. Cook and Mr. Seiwald? A. I took the stenographic notes that I had made of the confession of Seiwald, and in the presence of the persons that I named, I read them to the defendant Cook, as I sat by the bedside. Q. How far would you say that you were away from the defendant Cook at the time you were reading the statement of Seiwald, as you have described? A. Well, I was right close to the bed, not over three feet from his head. Q. What statement do you mean that you read? A. The statement that I had taken in the office of the chief that morning, the same morning of the statement of Seiwald. Q. Is that the one that you have referred to as having extended and being exhibit D? A. Yes, sir, the same statement. Q. Was there anything else said to the defendant Cook at that time, or in the presence of Cook and Seiwald, by any other person than yourself, if you remember? A. Yes, he was asked by you if he had heard the questions and answers that were read to him, and asked what he had to say about the matter, and what was his side of the story, and he denied knowing Seiwald, or that he had ever seen him before. He was asked how he got shot, and he said he didn't know; and he was asked if he did not know that he had killed two men, and he shook his head and denied everything. Q. Do you remember at that time of anything else, other than you have testified to, that took place in the room where Cook and Seiwald were? A. Why, no, sir, I believe that is all.''

Other witnesses who were present testified that Cook was interrogated after the reading of this statement to him, and he said he had nothing to say.

An information was thereafter filed against Cook and Seiwald charging them jointly with murder. Whereupon Cook filed the following motion for a severance:

"Comes now Oscar Cook, one of the defendants in the above styled cause, by J. S. Dickey, Jr., his attorney, and respectfully moves the court that the trial of the two defendants in this cause be separated, and that the defendant Oscar Cook be permitted to go to trial alone, for the following reasons, to-wit:

## I.

"That there is evidence which does not relate to the reputation of this defendant, and which would be material and admissible as to this defendant, if tried jointly with Edward L. Seiwald, but which would be immaterial and inadmissible as to this defendant, if tried alone.

## II.

"That evidence will necessarily be admitted in the prosecution or defense of the defendant Edward Seiwald, which, though inadmissible on the trial of Oscar Cook alone, will, if the joint trial be allowed, unavoidably reach the ears of the jury, to the fatal prejudice of the defendant Oscar Cook, whereby his constitutional right to trial by jury will be violated and the life and liberty of this defendant hazarded, without authority of law."

This motion was denied and they were tried jointly against Cook's protest. On the trial, Seiwald's statement exhibit D, read to Cook at the hospital, was offered by the district attorney, admitted, and read to the jury as evidence for the people against Cook, over his objection.

2. Two errors are assigned: First, denying the motion for a separate trial; second, admitting Seiwald's statement as evidence for the people against Cook. Both are well taken. The first error arose in denying a separate trial. The second would probably have been avoided if Seiwald had been tried separately, as the

statute requires in such a case. The statute, Laws of 1891, p. 132, is as follows:

"When two or more defendants are jointly indicted for any felony, any defendant against whom there is evidence, which does not relate to the reputation of such defendant, and which would be material and admissible as to such defendant, if tried separately, but which would be inadmissible as to any other of said joint defendants if tried alone, such defendant against whom evidence as aforesaid, is material and admissible, shall be tried separately. In all other cases, defendants jointly indicted or prosecuted, shall be tried separately or jointly in the discretion of the court." R. S., 1908, sec. 1981.

Illustrated by this case it means that when two defendants are jointly indicted, and there is evidence for the prosecution admissible against one (Seiwald) if tried separately, and inadmissible as to the other (Cook) if tried alone, the defendant against whom such evidence is admissible (Seiwald), *shall be tried separately.* Seiwald's statement was admissible against him tried either jointly or separately, but not admissible against Cook tried alone, in which case the statute says Seiwald shall be tried separately. But the severance must be requested, the court would not act upon its own motion. Trying Seiwald separately was but granting Cook's motion for a severance, and this he could demand as a matter of right under the statute.—*Davis v. People,* 22 Colo. 1, 43 Pac. 122.

In this *Davis* case five defendants were jointly indicted for conspiracy. One made a confession, after the consummation of the conspiracy, implicating the others, and it was admissible against him tried either jointly or separately, but not admissible against his co-defendants: *Held,* that upon motion for a severance under the statute, the defendant who made the confession, and against

whom it was admissible must be tried separately from the others, who could move for a severance as a matter of right.

The claim made below and here by the people is that to entitle Cook to a severance under the statute his motion must show that there is evidence on the part of the people admissible against him if tried separately, but inadmissible against Seiwald tried alone. In other words, that Seiwald, and not Cook, must ask for a separate trial on account of Seiwald's statement. If this is the meaning of the statute it was impossible for Cook to obtain a severance on the ground that as to him, Seiwald's statement, exhibit D, was inadmissible, which would place a foolish and senseless construction upon the statute, not intended by the legislature. In what manner could a severance benefit Cook on account of evidence admissible as to him but inadmissible as to Seiwald? Why should Seiwald be given a severance because he made a statement incriminating himself, which would be evidence against him in any event, tried jointly or separately? The purpose of the statute is to provide a separate trial, where a joint trial would prejudice the rights of others by the introduction of testimony immaterial and inadmissible as to them if tried alone, and to prevent this the statute provides for a severance; but it does not specify the person who may ask for the severance. It is fair to presume, however, that the statute was passed for the benefit of the defendant whose rights would be prejudiced. Using this case again as an illustration, it means that Seiwald, the defendant against whom the evidence was admissible, but incompetent and inadmissible as to Cook if tried alone, shall be tried separately, but it does not say Seiwald must make the motion. It does not name the moving party. We have attempted to show that Cook was the only defendant who might be prejudiced by a joint trial or who could be benefited by a severance.

So naturally he would be the moving party because he was the only person interested in the motion. The separate trial of Seiwald, commanded by the statute, in such a case, was to protect Cook, not Seiwald, against the danger of incompetent and inadmissible evidence. To grant Seiwald a severance would avail him nothing. The evidence was admissible against him in any event, tried separately or with Cook. On the other hand, his statement might prove fatal to Cook. Therefore, Cook had a right to move for a severance, and trying Seiwald separately gave Cook a severance.

There may be language in *Moore v. People,* 31 Colo. 345-6, 73 Pac. 30, in conflict with this interpretation of the statute which misled the trial court. If so, it must yield to the law as herein announced. A careful examination of that case, however, discloses that it did not turn upon a construction of the statute. The court expressly held in that case that the evidence was admissible against all the defendants, so that there was no call for a construction of the statute.

We do not wish it understood that we approve the form of the motion or the showing made in support thereof, as a precedent in all cases. There was no objection made on these grounds, either here or in the court below. The severance was denied below and the refusal to grant the motion is justified here by the attorney general, on the ground that under our construction of the statute in the *Moore* case, Cook could not make the motion. We think the case made, both here and in the court below, sufficiently admits the existence of evidence to sustain the motion which was denied, not because it was unsupported, but because it was erroneously assumed that Cook could not make it. The trial demonstrated that the motion was well taken, and the district attorney at the time it was argued not only had Seiwald's statement in

his possession but knew then he intended to use it. This sufficiently explains why he did not resist the motion upon the ground that it was not true, or was unsupported. All the facts and circumstances taken together, speak with sufficient force to demonstrate that those connected with the trial understood that this statement was to be used as evidence against Cook and, in the absence of objections made at the time, the motion for a severance will be treated as sufficiently sustained. However, if it could be held that the court properly overruled Cook's motion for a severance because it was unsupported, still the court's action in admitting exhibit "D" as evidence against him was erroneous. There were several statements or confessions of Seiwald offered in evidence, made subsequent to the commission of the crime, to which Cook objected as evidence against him. The district attorney conceded the objection well taken except as to exhibit D, read to Cook at the hospital, which the prosecution claimed was evidence against him. In answering an inquiry of the court the district attorney said exhibit D was offered against both defendants. The court sustained the district attorney's contention, to which Cook objected and claimed that exhibit D was not competent evidence against him. The court then told the jury that Seiwald's statements other than exhibit D were evidence against him only, but that exhibit D was evidence against them both. Because Cook did not present and ask an instruction at the close of the evidence that exhibit D should not be considered as evidence against him is immaterial. The court had the opportunity and passed squarely upon the question, when it told the jury, over Cook's objection, that exhibit D was admissible as evidence against both. There was no oversight in this matter and the court was not misled.

3. Regarding the admissibility of exhibit D in evidence against Cook, the law seems to be that while state-

ments, confessions and admissions of guilt made by one of several persons jointly indicted and tried for the same offense, are admissible against the person making them, they are not admissible against his co-defendants unless made in their presence and assented to by them. At any rate we think the statement of Seiwald read to Cook was not admissible in evidence against Cook, unless he had expressly or impliedly admitted it was true. 12 Cyc. 440. It is claimed by the attorney general that the statement was admissible because when read to him Cook remained silent and by his silence he tacitly acquiesced in the truth of the statement. In the first place the contention that Cook remained silent is not borne out by the facts, as the evidence shows that he denied everything, and said he had nothing to say. Again, the rule that silence gives consent is or is not applicable, according to all the surrounding circumstances and conditions under which the statement is made. If the circumstances are such as to show that the party did not intend to commit himself, then no inference of assent can be drawn from silence. Or, putting it another way, the circumstances ought to show that the party intended to commit himself by his silence. It can hardly be said under the circumstances of this case, that this long statement read to Cook when he was confined to his cot in the hospital suffering from a severe gun shot wound, and in the custody of the law, comes within this rule.—*State v. McCullum*, 18 Wash. 394, 51 Pac. 1044; *Commonwealth v. Kenney*, 12 Metc. (Mass.) 235, 46 Am. Dec. 672; *Geiger v. State*, 70 Ohio St. 400, 71 N. E. 721; *State v. Epstein*, 25 R. I. 131, 55 Atl. 204; *Merriweather v. Commonwealth*, 118 Ky. 870, 82 S. W. 592, 4 Ann. Cas. 1039.

4. It is claimed, not by the attorney general, but by some members of this court, that Cook's right to a fair trial was not prejudiced by the use of Seiwald's statement against him, for the reason that he put Sie-

wald upon the witness stand in his own defense, and that Seiwald, while on the stand as Cook's witness, testified in substance to the matters contained in the statement. While the bill of exceptions reads, in the memorandum made by the stenographer when witnesses were called, as follows: "Edward L. Seiwald, one of the defendants produced, sworn and examined in behalf of defendants, testified as follows: Direct examination by Mr. Bottom." We don't think the record conclusively shows that Seiwald was in any sense Cook's witness. The whole record shows the contrary. Mr. Bottom was Seiwald's, not Cook's attorney. As before stated, they were jointly informed against and the jury was trying them together in one case. Cook had constantly endeavored to segregate his defense from that of Seiwald's, the defense of each was antagonistic to the other, the record shows that they quarreled throughout the trial, and there was not the slightest harmony between them, their attorneys or their defenses. Under such a record it is preposterous to hold that Cook put Seiwald on the witness stand, or that he was in any sense Cook's witness, merely because the stenographer used the word "defendants" instead of "defendant," in his recitation. The language there used is not conclusive and must be construed in the light of the whole record. When so construed, it is clear that Seiwald was called and testified in his own behalf and not for, but against Cook.

Were we to assume that Seiwald was called and testified as a witness for both defendants, that would not cure or waive all the prejudice resulting from the admission of exhibit D as evidence against Cook. As before stated, exhibit D tells of other alleged robberies and crimes planned and committed by Cook in different parts of the country, in no wise pertaining to the offense then being investigated, which were not mentioned by Seiwald in his testimony. These matters contained in the statement of Seiwald, if believed by the jury, would preju-

dice them against Cook, and affect his credibility as a witness in his own behalf.

*Reversed.*

Decision *en banc.*

Mr. JUSTICE BAILEY and Mr. JUSTICE GABBERT dissent.

Mr. JUSTICE GABBERT dissenting:

The judgment of the district court should be affirmed. The motion of defendant for a severance was wholly insufficient and was properly overruled. It is true that under our statute a separate trial should be granted where it is made to appear that a defendant will be prejudiced on a joint trial by the admission of evidence which is not admissible as against him but which is competent as against his co-defendant. But this must be made to appear in support of a motion for a severance, not by merely stating that at the trial evidence will be admitted which is not competent as against the moving defendant but is competent against his co-defendant, but the evidence which it is claimed is incompetent must be set out so that the court will be given the opportunity to determine whether or not the defendant moving for a severance may be prejudiced by testimony competent as to his co-defendant but not admissible as to him. Such has been the recognized practice in this jurisdiction. *Davis v. Hiefel,* 22 Colo. 1, 43 Pac. 122; *Moore v. People,* 31 Colo. 336, 73 Pac. 30.

In what other manner can the court be advised whether the severance should be granted? The motion in the case at bar did not state a single fact nor a scintilla of evidence which it was claimed would be introduced on the part of the prosecution and would be competent as against the defendant Seiwald and incompetent as to Cook to support it, and was therefore properly overruled.

Hence the defendant Cook is not in a position to urge that he was prejudiced by being tried jointly with Seiwald, and his case is no different from what it would have been had he not interposed the motion. The confession or statement of Seiwald was unquestionably admissible against him and, as he was being tried jointly with Cook, could not be excluded because it was not competent as to the latter. His right and remedy was to request an instruction to the jury to the effect that in determining his guilt or innocence Seiwald's statement or confession should not be considered. *Williams v. State,* 81 Ala. 1, 1 So. 179, 60 Am. Rep. 133. No such request was made.

In brief, the object of the statute requiring a separate trial of a defendant jointly indicted with another for the commission of a crime, when it is made to appear on motion of one that testimony admissible against the other is not admissible against him, is to secure the moving defendant a trial wherein only evidence competent as against him will be introduced. But this is a privilege which he must exercise in apt time and in the right manner, otherwise it is waived. If he does not take advantage of the privilege conferred by the statute, then when testimony is introduced at the joint trial which is competent as against his co-defendant but not as to him, he must request an instruction excluding such testimony from the consideration of the jury as to him. If he does not no question on the subject is presented for review.

Independent of these considerations the record discloses that the admission of Seiwald's confession could not in any possible view of the case have prejudiced Cook. After Seiwald's statement was read to the jury he was called to the stand and examined as a witness on behalf of defendants. That is what the bill of exceptions states and we are not at liberty to assume a fact which the record contradicts. Seiwald's testimony, as thus elicited,

agreed in all substantial particulars with his statement. He detailed the commission of the crime, the part each took and the statement of Cook both before and after the homicide. Clearly, when Cook joined in having Seiwald placed upon the stand as a witness for both and from an examination as a witness, Seiwald stated substantially what he had stated in his confession, which had been admitted, Cook can not be heard to successfully assert that error was committed in the admission of Seiwald's confession for any reason or upon any ground.

The writer is authorized to state that Mr. JUSTICE BAILEY concurs in this opinion.