# LEE JONES v. STATE.

No. A-10918.   Jan. 12, 1949.
(202 P. 2d 228.)

244

Hughes & Hughes, of Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J. This is an appeal from the county court of Kiowa county by Lee Jones, defendant below, wherein on March 20, 1947, he was charged, tried and convicted for the crime of possession of intoxicating liquor and sentenced to pay a fine of $50 and costs and to confinement in the county jail for a period of 30 days. A motion for new trial was filed by the defendant, overruled by the court on April 26, 1947, to which the defendant excepted and from which action of the court this appeal has been perfected.

The defendant makes numerous assignments of error but it will be necessary for us to consider only one of them, to the effect that the "court erred in not sustaining the defendant's motion to suppress the evidence". In support of said motion to suppress Sheriff R. T. Hood and Deputy Sheriff E. O. Peters and the defendant tes-

tified. Their evidence in substance disclosed that the sheriff was standing in a filling station and saw the defendant drive by, that as he came out, he saw the defendant on the wide gravelled road going south driving at an excessive rate of speed about a quarter of a mile away. The speed at which the defendant was driving prompted him to follow him. In pursuing the defendant he passed the home of his deputy, E. O. Peters, a quarter of a mile from the south edge of Hobart. He signalled and Mr. Peters also took up the pursuit. The sheriff testified that though he had a speedometer he did not know exactly how fast he was going but judged it was between 65 and 70 miles per hour. He later said he would not swear to "anyways near" the speed the defendant was driving. The sheriff testified however that the defendant was driving in such manner as to endanger his life or the lives of other people, that the only way he could judge the rate of speed was by the great amount of dust that was being kicked up by the defendant's automobile. He said that they were driving into a south wind. He testified that he never did see the defendant's car out of control. He said the defendant's vision might have been clear and that he "was not endangering other people's lives, except the man behind him on account of the dust". In other words, admittedly the defendant had his car under control and had a clear vision ahead of him. In fact, he says he would not say it was out of control because he did not see it out of control and it was not swerving. He said that the defendant drove straight and that in his judgment he could have brought the car to a stop within the assured clear distance ahead of him. He said the defendant kicked up so much dust he dropped behind and Deputy Sheriff Peters passed him, and they continued the pursuit for about 13½ miles until the defendant stopped.

On the motion to suppress Deputy Sheriff E. O. Peters testified in substance substantially to the same effect as did Sheriff C. T. Hood. In addition thereto said that he passed the sheriff during the chase and pursued the defendant until he turned west, slowed down some and crossed a one-way bridge, at which point he locked his front bumper on to the rear bumper of the defendant's car and the defendant stopped within a space of fifteen feet. At this time he said they were driving between 70 and 75 miles per hour. In so doing it is obvious that he thus endangered the defendant's life as well as his own. He testified his estimate of the speed was but a guess because his speedometer was broken. In this connection it is well to call attention to the fact the scientific tests reveal a car travelling at the rate of 70 miles an hour under favorable mechanical operation, best road and weather conditions may be stopped within a distance of 192 feet. This court will take judicial knowledge of the fact that a car being driven 70 to 75 miles an hour could not be stopped within 15 feet under the conditions herein involved. He said that he never saw the defendant's car swerve. After they stopped he placed defendant under arerst for reckless driving, notwithstanding he said he did not suspect the defendant of having committed a felony at the time he was arrested, in fact, he says he "did not know what he was wanted for or nothing". He had no warrant for his arrest and no warrant to search his car. Thereafter they took the defendant to the county jail in Hobart, Oklahoma, and there searched his car and found therein approximately one case of whisky.

The defendant testified his car was mechanically in good shape, and equipped with practically new tires. He

further testified that his car was under control at all times and he could have brought it to a stop within the assured clear distance ahead. He testified he did not know he was being followed. The defendant said that he ordinarily drove 60 to 65 miles per hour, and did not believe he was exceeding that speed in the instant case. In this connection, if the cloud of dust was as dense and thick as the officers testified while they were driving south in pursuit of the defendant, it is highly speculative if not a foregone conclusion that they could not have brought their cars to a stop within the assured clear distance ahead.

The officers and the defendant testified they met but one car in the 13½ miles travelled, and that they passed no other car on the road.

In the light of the foregoing facts, it appears that the evidence is wholly insufficient to support the charge of reckless driving, and that the arrest made therefor and the charge based thereon was purely a pretense and subterfuge for the real purpose of searching the automobile. We are of the opinion that the arrest and search was unlawful and the evidence obtained thereby should have been suppressed. Under the provisions of Title 22 O.S.A.1941 § 196:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence. * * *"

This court has held that the right of a peace officer to arrest without a warrant is defined and limited by the aforesaid statute. Marple v. State, 51 Okla.Cr. 240, 1 P.2d 836; Matthews v. State, 45 Okla.Cr. 110, 282 P. 180; Altizer v. State, 21 Okla.Cr. 229, 205 P. 1106; Sunday v. State, 14 Okla. Cr. 620, 174 P. 1095; De Graff v. State, 2 Okla. Cr.

519, 103 P. 538. See page 234 of 21 Okla.Cr., page 1108 of 205 P. of Altizer v. State, supra, wherein this court said:

" It is not the purpose or intention of this court to restrict or impede peace officers who make arrests or attempt to make arrests legally. The statute in plain and unmistakable terms provides the circumstances under which officers can legally make arrests without a warrant."

Moreover, in Collegenia v. State, 9 Okla.Cr. 425, 132 P. 375, 381, this court has said that:

"In making an arrest without a warrant for a misdemeanor committed in the presence of the officer, the fact that such an offense was committed or attempted must exist to authorize the officer to act."

Here, the testimony of both Mr. Hood and Mr. Peters is insufficient to establish the fact of reckless driving. Therefore, the subsequent search of the automobile without a warrant based upon the charge of reckless driving is without authority of law. This must of necessity follow since at the time the charge of reckless driving was laid, there was no restriction by law limiting the speed at which one was permitted to drive an automobile except as provided in Title 47 O.S.A.1941 § 92, reading in part as follows:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

The foregoing provision places no limit on the speed of an automobile. Under the conditions herein involved

we cannot say the defendant was driving his car at an excessive rate of speed. The evidence shows the defendant was operating his automobile within the provisions of the foregoing statute. Under the facts of this record it cannot be said the defendant committed an offense in the officers' presence. Therefore, the arrest was without authority of law. In Bowdry v. State, 64 Okla.Cr. 86, 77 P.2d 753, 756, this court said:

"The patrolman's effort to justify his unlawful act that the defendant was driving recklessly or intoxicated is not sustained by his own testimony, but there is no contention that the defendant was intoxicated or drunk at the time he stopped him. An officer seeking the enforcement of one law should not violate another in order to accomplish his purpose. Such conduct brings the administration of justice into disrepute and shows a subversion of peace and good order. When the officer stopped the defendant on the highway and searched his car, he did so without any legal authority and the search and seizure was an unlawful violation of the defendant's rights as guaranteed him by the laws and the Constitution of the state of Oklahoma, Art. 2, § 30.

"Where an officer does not know of the act constituting the offense, it is not committed in his presence. The defendant may be guilty, but he is entitled to a fair and impartial trial and to have all incompetent testimony excluded."

Certainly under the testimony of Mr. Peters, he did not even know why he was in pursuit of the defendant. It therefore appears so far as he was concerned the charge of reckless driving was only an afterthought. In Tucker v. State, 62 Okla. Cr. 406, 71 P. 2d 1092, 1094, the defendant was arrested for reckless driving, and search made of his automobile, and he was likewise convicted on a charge of transporting intoxicating liquor. In the body of the opinion this court said:

"The defendant had a right to be on the highway, and while the witness Kerr attempts to say he stopped and arrested him for fast driving, the witness Agee contradicts Kerr and states positively he stopped the defendant, and the defendant was not violating the law when he stopped him and had not gotten out of his car. There is no contention by either of the state's witnesses that they could see the defendant had whisky in his car at the time they stopped him upon the public highway without a warrant for his arrest, or to search his car.

"An officer seeking the enforcement of one law should not violate another in order to accomplish his purpose. Such conduct brings the administration of justice into disrepute and shows a subversion of peace and good order. When the officers searched the car of the defendant and claimed to have found the whisky therein, they did so without any legal authority, and the search and seizure was unlawful and a violation of the defendant's rights as guaranteed him by the laws and Constitution of Oklahoma."

The facts in the case at bar are more favorable to the defendant than in the Tucker case, supra. In the case at bar neither of the officers testified to facts which would indicate the defendant was driving his car in a reckless manner, but to the contrary they testified that the defendant had his car under control at all time, and that he was not driving his automobile at a speed greater than would permit him to stop within the assured clear distance ahead.

In Blair v. State, 75 Okla. Cr. 265, 130 P. 2d 545, this court said:

"Whether search of, and seizure from, an automobile upon a public highway, without a search warrant, is reasonable, is, in its final analysis, to be determined as a judicial question, in view of all the circumstances under which it is made."

In the case of Ingraham v. State, 48 Okla.Cr. 178, 290 P. 344, this court said:

" 'Where a conviction is based solely on evidence obtained by means of an unauthorized search and seizure, and admitted over the defendant's objection, the conviction will be reversed as contrary to law and the evidence.' * * *

"It is fundamental that a citizen may not be stopped on mere suspicion, and his person or his car searched in order to procure evidence against him. Evidence procured in this manner is not admissible." Section 30 of Art. 2 of the Constitution of the State of Oklahoma provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

To sustain this search and seizure would be to ignore the foregoing plain provisions of the Constitution, as well as the provisions of Title 22 O.S.A.1941 § 196, supra. This we will never knowingly do. As was said in Altizer v. State, supra [21 Okla.Cr. 229, 205 P. 1109]:

"The American people are very jealous of their fundamental right to personal liberty. They have ingrafted in every document of organic law, from the inception of this government to the present day, provisions against unreasonable searches and seizures, and when peace officers, in plain violation of these fundamental rights, assume authority in making arrests, not given by statute, their actions and conduct will receive close scrutiny by the courts and condemnation when deserved. The fact that they are peace officers, sworn to support and enforce the law, should caution them to be more careful in its observance. Either wanton disobedience of our laws or lack of observance of them by petty peace officers is ofttimes a moving cause for willful disrespect for the law by unthinking persons, and leads to anarchy, mob violence, and a reign of terror in such communities.

"On the other hand, it is the plain duty of the judiciary to support and protect those peace officers who act within their authority in making arrests and otherwise attempting to enforce the penal statutes of this state. In no other way may the peace and dignity of the state be maintained and the judgments of its courts enforced. This court fully realizes the importance of lawful law enforcement and is ever ready to extend its protecting arm thereto, but illegal arrests or attempted arrests cannot be sanctioned or even tolerated merely under the cover of a peace officer's commission."

In the light of the foregoing provisions of the Constitution, statutes of the State of Oklahoma, and the adjudicated cases, the trial court should have sustained the motion to suppress, and discharge the defendant. It was error for it so not to do. For all of the foregoing reasons the case is reversed, and the defendant ordered discharged.

JONES, P. J., and BAREFOOT, J., concur