## No. 19,992.

CARL ROBERT OAKS *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(371 P. [2d] 443)

Decided April 23, 1962.
May 28, 1962, opinion modified and rehearing denied.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. F. J. BRAUER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

SHOULD this court reverse a judgment and sentence in a criminal case where the guilt of the defendant is indicated but the record reveals the commission of serious, prejudicial errors in the conduct of the trial? Such is the dilemma confronting the court in this review by writ of error.

Immediately the question is put, the answer comes to mind: all that need be done is for the court to weigh the rights and interests of society as against those of the accused as it performs its function of administering justice, and as thus equated, Oaks' guilt being suggested by the record, his rights and interests must give way. But such answer does not bear up under a searching inquiry. The quick and facile answer is not the solution here.

The good of society is not necessarily tied up with the easy solution of a single case. That which might be gained in the disposition of a single case may constitute at once an ill blow to society, where it represents a departure from established concepts of criminal law. Other

breaches of tried and tested rules of criminal law might be foreshadowed or compelled by such a departure.

To develop an exception in this case to the rule that the commission of substantial, prejudicial error in the trial of a cause gives ground for reversal would be most dangerous, and productive, in the march of time, of much mischief. After all, society is nothing more than individuals as they collectively comprise the community or the public. It follows that divestiture of the rights of the individual is in some measure a deprivation of the rights of society.

An exception, to extend only to this case or to similar cases, would also be evil innovation. The law's proud boast is that it has discountenanced the double standard and that the double standard is antithetical to the concept of a fair trial. We do not apply a different standard in the review of a trial of a defendant whose guilt is more obvious from that used for another whose guilt is less obvious, even though the same grave errors, prejudicial to both defendants, were committed in the course of their separate trials. If the substantial rights of the accused are not respected and safeguarded in this case, is not society the loser? For it is an essential part of justice that the question of guilt or innocence shall be determined in accordance with a process that respects and secures the substantial rights of an accused.

 Errors in the course of a trial may be technical or substantial. This court has held that technical errors generally afford no grounds for reversal of a judgment where the guilt of the defendant has been clearly proven. *May v. People,* 77 Colo. 432, 236 Pac. 1022; cf. *Phenneger v. People,* 85 Colo. 442, 276 Pac. 983; *Balfe v. People,* 66 Colo. 94, 179 Pac. 137. But even technical errors may in some circumstances form the bases for reversal.

If technical errors result in "prejudice to the substantial rights of the defendant," this court will reverse. *Cliff v. People,* 84 Colo. 254, 269 Pac. 907. And, numerous formal irregularities, each of which in itself might be

deemed harmless, may in the aggregate show the absence of a fair trial, in which event a reversal would be required. *Penny v. People,* 146 Colo. 95, 360 P. (2d) 671. Moreover, technical errors may have a significance requiring a reversal in a close case. *People v. Van Cleave,* 208 Cal. 295, 280 Pac. 983.

Commission of substantial error has universally given cause for reversal. The unanimity of decision, that "a judgment must be reversed for an error, defect, or omission which is not technical but which denies or affects the substantial rights of accused," becomes evident from the hundreds of cases cited to support the quotation appearing in 17 Č.J. 369, §3751, 24B C.J.S., §1948, p. 399. We would depart from traditional criminal trial concepts should we adopt a doctrine that such rule would be disregarded where the evidence contains an intimation of the guilt of the defendant.

The Machiavellian doctrine — that the end justifies the means — is stranger to, and wholly uncongenial with, our constitutional and common-law concepts. A wrong means to achieve a deserved result finds no sanction in our law; only a right means effecting a proper end finds justification in law. These are fundamental precepts which we reaffirm. See *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. (2d) 1081.

The precise question stated at the beginning of this opinion has not been answered by this court, but that a negative answer to it would be disserving is definitely indicated in *Graves v. People,* 18 Colo. 170, 32 Pac. 63. Here is language from the opinion which is monitor to the court's conscience in the consideration of the present case: "In all criminal prosecutions the law of the land guarantees to every accused person a fair trial, and a right to meet the witnesses against him face to face. This plaintiff in error has not had such a trial. Suspicions and statements of the deceased not even having the sanction of her oath were put in evidence against him by third parties, in violation of fundamental principles. Take

away any one of these guarantees, and a precedent would be established which, if followed to its legitimate end, would lead to arbitrary punishment, which is inconsistent with our institutions, and utterly incompatible with the safety of the citizen.

"It is conceded that not every error occurring upon a trial will warrant a reversal. If it be shown that a substantial compliance with the law has been had, even a capital sentence may be allowed to stand; but in this case the jury were allowed to consider evidence on the one hand of a character that has been universally condemned as improper, evidence violative of fundamental and long-established principles, while on the other evidence was excluded which the defendant had an undoubted right to have considered. The error in this regard being aggravated by error in the charge to the jury, prejudicial to the rights of the accused, the duty of this court to set aside the conviction is plain."

█ Equally important is the right to trial by jury guaranteed by Article II, Section 23 of the Constitution of Colorado: "The right of trial by jury shall remain inviolate in criminal cases. . . ." This right contemplates a fair and impartial jury to hear the case; such is the mandate of Article II, Section 16 of the Constitution: "That in criminal prosecutions the accused shall have the right to * * * a * * * trial by an impartial jury. . . . *Wharton v. People,* 104 Colo. 260, 90 P. (2d) 615. A jury is no longer impartial which has been misled by inadmissible evidence. *State v. Robinson,* 246 Wash. (2d) 909, 167 P. (2d) 986; *Jones v. State,* 88 Okla. Crim. 243, 202 P. (2d) 228.

Among the rights guaranteed to the people of this state, none is more sacred than that of trial by jury. Such right comprehends a fair verdict, free from the influence or poison of evidence which should never have been admitted, and the admission of which arouses passions and prejudices which tend to destroy the fairness and impartiality of the jury. This right to a fair and im-

partial jury "is all-inclusive; it embraces every class and type of person. Those for whom we have contempt or even hatred are equally entitled to its benefit. It will be a sad day for our system of government if the time should come when any person, whoever he may be, is deprived of this fundamental safeguard." *United States v. Haupt,* 136 F. (2d) 661.

Viewing in retrospect, as we do (an advantage which the trial court does not have), we have before us a case in which there is competent evidence to sustain the guilt of the accused, but in which inadmissible evidence was received. But, as he stands before the trial tribunal, the accused is not rightless, and he is armored with the presumption of innocence. He has rights derived from the Constitution, from statutes and from the common law. These rights must be respected and protected in the trial process, since they are the very essence of a fair criminal trial. Whether these rights were respected and safeguarded by the trial court is for us to determine. If they were not, regardless of our conviction of his guilt, we must reverse.

What we may think concerning the defendant's guilt is not the criterion by which we are guided in the disposition of a criminal case on review. Our function is not to hold which of contradictory facts are determinative, nor to draw inferences from facts permitting more than one inference; these are prerogatives of a jury. As related to this case, we must determine whether the jury considered inadmissible evidence, the reception of which may have influenced the jury as the fact-finder and may have been decisive in the rendition of the verdict.

The right to a fair trial does not depend upon the degree of culpability disclosed by the evidence. An accused whose guilt is evident should be tried by the same norms as one whose guilt is not so evident. Indeed, the idea of an unfair trial for the first and a fair trial for the latter is unthinkable and completely out of harmony

with judicial process as it is known and practised in this country.

Firmly embedded in both federal and state due process is the fair trial concept in criminal cases. Antithetical to constitutional due process is the subjection of an accused to an unfair trial. The guilt of the accused in no way lessens our duty to see that due process is afforded him in the course of his prosecution. *Lisenba v. People,* 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166; *Wharton v. People,* supra.

Oaks was convicted of murder in the first degree and his punishment fixed at life imprisonment. In the trial of the case he was ably represented by court-appointed counsel. They made timely objection to certain evidence elicited by the prosecution, the admission of which compels reversal. So much of the evidence as relates to the reversible aspects of this case will be narrated.

At an inquisition held on June 1, 1960, at 8 o'clock in the evening at the Jefferson County Jail, Golden, Colorado, one Roy Edward Beaty was questioned by the Assistant District Attorney. Also present at the investigatory proceeding were Dr. Charles A. Rymer and a certified shorthand reporter who stenographed the attorney's questions and Beaty's answers for later transcription to typewriting. Dr. Rymer was and is a well-known psychiatrist.

From this interrogation it appears that Beaty was 15 years and 3 months of age on December 20, 1959. Before Thanksgiving of that year, Beaty ran away from home and went to the Oaks' household, where he was permitted to stay. The Oaks maintained living quarters in some motel rooms. Besides Mr. and Mrs. Oaks, there were Mrs. Oaks' four children by a former marriage and two children by their marriage.

In answer to questions, Beaty told how the Oaks' children, by the direction of Mr. Oaks, committed frequent acts of thievery — "helping themselves to clotheslines," stealing small items while the family was shopping, and so forth. He depicted Oaks as a man who fre-

quently resorted to the bottle, and "whenever he was liquored up he would say, 'Nobody comes in my house that don't have something to bring in.'"

According to Beaty, Oaks had been drinking on December 20, 1959, when he announced that "we was going to rob a place." Beaty immediately demurred, whereupon Oaks threatened to kill Beaty's mother. By way of emphasis Oaks said, "I mean it." Considering the minatory content of Oaks' proposal if he continued to refuse to participate, Beaty finally consented to be a party to the contemplated crime.

Oaks then instructed Beaty regarding the manner in which they would accomplish the crime. He advised Beaty to say to the person who came to the door "to give me your money or else I will give you a belly full of glass." Having completed his directions, Oaks drove his car to the scene of the intended robbery, a grocery store on Sheridan Boulevard, near its intersection with the Morrison Road in Jefferson County. With him in the car were Beaty and the two oldest children of the Oaks menage.

In the car were pillow cases which were to be worn over their heads, with slits for purposes of seeing. A shotgun was also brought along. At the appointed time they left the car, and Oaks tossed the gun to Beaty, admonishing him, "Now, you know where to go and what to do."

Oaks parked his car about "two car lengths, something like that" from the store. Beaty went to the door of the store, tapped on the glass and its frame, at which time Oaks said to him, "You remember what to do." when the man in the store came to the door Beaty said, "Please, Mr., give me your money," and when the man "mumbled something," Beaty continued with some warning about "a belly full of glass." Then the gun went off. "We ran and got in the car, and [Oaks] hollered, 'You stupid fool.'"

The foregoing in some measure indicates the scope

of this investigatory session; to further detail it is unnecessary. Over the objection of Oaks the transcription of this examination was admitted in evidence. At the time of its admission, and subsequently, the trial court admonished the jury that Beaty's disclosure "is only admissible to show the guilt of the principal, as is indicated or attempted to be proven. It is admitted for that purpose only, the guilt of the principal, Mr. Beaty, and for no other purpose."

Whether Beaty was a principal should not have been resolved as a matter of law by the trial court, considering his age, the threats made against his mother's life, and the extent to which these circumstances may have impelled Beaty to act. Here was a question of fact which should have been determined by the jury after being properly instructed concerning the matter. *Heivner v. People,* 7 Colo. App. 458, 43 Pac. 1047. In making the assumption that Beaty was the principal, the trial court usurped the function of the jury in another respect: it drew the inference for the jury that Oaks was an accessory. *Heivner v. People,* supra.

That the minority of Beaty and the coercive tactics of Oaks exerted upon him raise a fact question regarding Beaty's being a principal finds support in the case of *Beal v. State,* 72 Ga. 200. See *State v. Learnard,* 41 Vt. 585; *Perryman v. State,* 63 Ga. App. 819, 12 S.E. (2d) 388; *Blackburn v. State,* 23 Oh. St. 146.

Whether or not the transcription represented the statement of a principal, it should not have been admitted in evidence in its totality; much of it was damaging hearsay as to Oaks, and considerable of this hearsay was not relevant to the homicide issue, although in content and color highly prejudicial to his cause. His prototype, the fictional Fagin, was no more despicable and vile a character than was Oaks, as he was depicted by Beaty in schooling the children in petty crime.

This hearsay evidence of thievery by the children at the behest of Oaks tended neither to prove nor dis-

prove Oaks' involvement in the crime for which he was being tried. Yet its baneful effects are obvious. Antecedent acts and transactions, unrelated to the accusation against a defendant but likely to create an attitude of unfairness and prejudice toward him, should not be received in evidence. *Gill v. People,* 139 Colo. 401, 339 P. (2d) 1000; *Wood v. People,* 60 Colo. 211, 151 Pac. 941. See *Kostal v. People,* 144 Colo. 505, 357 P. (2d) 70. "It is basic in our system of trials that extraneous prejudicial matter tending to disparage the character of the accused is inadmissible." *Gill v. People,* supra.

Oaks' operation of a juvenile crime school, reprehensible as it must have been to the jury, was not proper matter to be considered by the jury; to justify a conviction for murder on "general principles" is doctrine wholly alien to our criminal jurisprudence. *Green v. State,* 172 Ga. 635, 158 S.E. 285. See *Brown v. People,* 130 Colo. 77, 273 P. (2d) 128.

If Beaty had been present personally as a witness, he could not have testified to Oaks' Fagin-like activities, *Gill v. People,* supra; *Webb v. People,* 97 Colo. 262, 49 P. (2d) 381. As testimony it would have had no evidential relevance; as hearsay evidence it is equally, if not more, unworthy of admission in evidence.

But the transcription of this session with Beaty contains other evidential infirmities. It was made out of Oaks' presence, and embraced within it were criminating statements against Oaks, to which Oaks never gave express or implied assent. *Cook v. People,* 56 Colo. 477, 138 Pac. 756; *Miller v. People,* 98 Colo. 249, 55 P. (2d) 320; *Paine v. People,* 106 Colo. 258, 103 P. (2d) 686; *Russell v. People,* 125 Colo. 290, 242 P. (2d) 610.

The grounds for admitting the transcription, stated by the trial court, are disowned in *Miller v. People,* supra, from which we quote generously in order to show that the case is a controlling precedent:

"Error is assigned on the admission of testimony of the sheriff, the undersheriff and Derowitsch, as to an oral

confession made by Hammel out of the presence of this defendant. This testimony, admitted over the objection of defendant was the relation of an oral confession that Hammel had made to them, of his own participation in the crime subsequent to its commission. All of such statements on the part of Hammel were made out of the presence of this defendant. The testimony of Derowitsch concerned conversations he had had with Hammel and Anderson, also subsequent to the completion of the crime, implicating defendant, and which occurred out of his presence. Answering the objections made to the admission of his testimony, the district attorney stated to the court, apparently in the presence of the jury, that it was admissible to establish the guilt of the principal, which was necessary before an accessory could be convicted, and that the evidence was offered for that, and for no other purpose. The motion for severance hereinbefore mentioned was grounded, and apparently granted, upon the very reason that would necessitate the exclusion of a part of the testimony, to the admission of which complaint is here made. This defendant, being an accessory before the fact, and under the theory of the district attorney and the court, though properly charged as principal, under the statute, the guilt of the principal must be established. Only such parts of the confessions, statements or admissions as would tend to prove the guilt of the principal could be admitted, and not the parts of such confessions, statements or admissions, as would implicate this defendant, as an accessory when made out of his presence, and after the commission of the crime.

"The sheriff testified concerning conversations had privately with Hammel implicating defendant as an accessory, and these were not under the sanction of an oath. This defendant had no opportunity of cross-examining Hammel, whereby his credibility might have been impeached, and the jury was deprived not only of its means of determining the motive or attitude of Hammel, but also of the opportunity to observe his conduct on the

witness stand. As to this defendant, such testimony must be considered as hearsay and subject to all of the objections which exist thereto. The complicity of an accessory cannot be so established. The trial court should have distinguished between the evidence introduced solely to establish the guilt of the principal, and that part which involved the defendant, and its failure to do so constituted reversible error. 'The law seems to be that while statements, confessions and admissions of guilt made by one of several persons jointly indicted and tried for the same offense, are admissible against the person making them, they are not admissible against his codefendants unless made in their presence and assented to by them.' *Cook v. People,* 56 Colo. 477, 138 Pac. 756.

"If the rule thus announced had been followed, Hammel's statement would not have been admitted against Miller, because not made in his presence." *Miller v. People* does not enunciate novel law; it merely follows *Mulligan v. People,* 68 Colo. 17, 189 Pac. 5, a landmark decision of this state.

We hold that the reception of Beaty's statement in evidence was prejudicial error for the reasons elaborately outlined above.

Dr. Rymer, an eminent psychiatrist, was called as a witness by the People. He stated that he had been present on two occasions when Oaks was interrogated by the Assistant District Attorney. He also stated that he questioned Oaks, advising Oaks that he was a doctor. His inquiries addressed to Oaks in private were conducted as a psychiatrist at the request of the District Attorney: "I was simply making a psychiatric examination as to his mental condition." This examination was made before any action had been instituted against Oaks.

The doctor's testimony was received in the People's case in chief, and it related wholly to Oaks' statements to him concerning his participation in the attempted robbery and the killing of the storekeeper. Not one word was uttered by the doctor, having to do with the mental

condition of Oaks. Was such testimony properly admitted over the objection of Oaks?

The case of *Early v. People,* 142 Colo. 462, 352 P. (2d) 112, is relied upon by the state to sustain the reception of such testimony in evidence. As in this case, psychiatrists there examined the defendant at the request of the state after his arrest. Their function, too, as in this case, was to carry on a psychiatric examination. But there the similarity between the Early case and this ceases. The difference at this point is of utmost significance.

In the Early case the psychiatrists testified as experts regarding the mental condition of the accused. They carried out their function to examine the defendant psychiatrically, and their testimony related to their findings. In this case, under the guise of a psychiatric examination, Oaks divulged under interrogation his participation in a crime, and that which is thus elicited is used to convict him. Such constitutes a departure from the very limited application of the doctrine laid down in the Early case.

Had the examination been conducted pursuant to C.R.S. '53, 39-8-2, such substantive evidence could not have been used "on the issue of guilt of the crime charged." The statute further provides that such evidence shall be "admissible only on the trial of the issue of insanity except on the trial of the issue of guilt of a murder charge to rebut evidence of insanity offered by the defendant. . . ."

█ We find no justification for the admission of the testimony of Dr. Rymer, recounting what he had learned from Oaks concerning the issue of guilt of the crime charged; it was inadmissible, and it was prejudicial. Its reception is another ground requiring reversal.

The judgment is reversed.

Mr. Justice McWilliams specially concurring.

Mr. Justice Moore and Mr. Justice Pringle dissent.

MR. JUSTICE McWILLIAMS specially concurring.

I agree that the judgment of conviction must be reversed and the cause remanded for a second trial, though I cannot subscribe to the majority opinion in its totality.

Oaks was separately charged, tried and convicted of murder in the first degree, the jury fixing his punishment at life imprisonment. At his trial the People introduced into evidence exhibit P, which was a thirty-three page, typewritten, question-and-answer type statement of Beaty. In this statement Beaty stated, among many, many other things, that he shot and killed one Straub in an attempted robbery and went on to describe how Oaks was not only present and assisting him in the robbery but had actually planned and in fact "ordered" its commission. In this same statement Beaty under questioning also related in great detail the nature of his association with Oaks, and in so doing disclosed that he had committed numerous other crimes, mostly of a petty nature and totally unrelated to the charge of murder, but all committed at the urging of Oaks. Exhibit P was given by Beaty out of the presence of Oaks, and there is nothing in the record to indicate that Oaks even knew of its contents, let alone that he assented thereto. Over a timely objection People's exhibit P was received in evidence *in its entirety,* the trial court instructing the jury that before Oaks could be convicted as an accessory to the crime of murder in the first degree, the People must first prove beyond a reasonable doubt that Beaty as the principal was himself guilty of first degree murder, and that this statement was to be considered by the jury only in determining whether Beaty was guilty as a principal of murder in the first degree.

Oaks contends that under the circumstances it was error to receive in evidence in its entirety People's exhibit P, which not only was a "confession" by Beaty that he killed Straub but also in great detail implicated and incriminated Oaks in the homicide. This ruling of the

trial court was clearly erroneous. See *Miller v. People,* 98 Colo. 249, 55 P. (2d) 320.

Was this error of reversible proportions? I conclude that it was. At trial Oaks testified in his own behalf and denied any participation on his part in the killing. The People had therefore introduced a five page "confession" of Oaks, which in my view was sketchy, vague and singularly lacking in detail. This "detail" was amply supplied by People's Exhibit P.

In my opinion we are not justified in speculating that even if certain portions of exhibit P had been excluded, the jury would still have convicted Oaks of first degree murder. Oaks has the right to have his guilt or innocence determined by a jury that has not been exposed to this clearly inadmissible and highly prejudicial evidence, i.e. those portions of People's exhibit P which tend to incriminate and implicate him. Indeed in my opinion under the circumstances there is real doubt that any portion of People's exhibit P was admissible. C.R.S. '53, 40-1-12 provides that one who stands by and aids, abets or assists in the perpetration of a crime shall be deemed, considered and punished as a *principal.* Therefore, under the People's theory of the case Oaks was a principal, not an accessory of any type, and he was in fact charged and ultimately punished as a principal.

MR. JUSTICE MOORE dissenting.

The instant case involves a homicide committed in perpetration of the crime of robbery. Under the pertinent statute the crime of necessity could be nothing less than murder in the first degree. The only area within which the jury had any discretion was with reference to the punishment to be inflicted in the event of a verdict of guilty. The jury in fixing the punishment in this case returned a verdict imposing a sentence of life imprisonment. Had the jury fixed the punishment at death I would agree that the errors committed in the trial of the

case would require a reversal of the judgment. This is true because the evidence erroneously admitted might have operated to the prejudice of the accused with relation to the fixing of the penalty.

Under the record here it is inconceivable that any jury of qualified persons could consider the evidence which was properly received without reaching the conclusion that the guilt of the accused had been established beyond all question. The defendant admitted participation in the contemplated robbery which resulted in murder. Over his own signature he approved the written statement of the boy Beaty concerning the preparation for and perpetration of the offense.

I respectfully submit that the overwhelming weight of competent evidence establishing the guilt of the accused, coupled with the fact that the crime charged was a felony murder, with the further circumstance that the jury imposed the minimum sentence, should lead to the conclusion that no prejudice resulted to the defendant because of the admission of incompetent evidence. Numerous opinions of this court have indicated that where, as here, the guilt of an accused is overwhelmingly established by competent evidence, the admission of some incompetent testimony will not be grounds for reversal in the absence of a showing of prejudice to the rights of the accused. In this connection I quote from *May v. People,* 77 Colo. 432, 236 Pac. 1022, the following: "The competent evidence in the instant case so clearly establishes the guilt of the defendant as to leave no room for doubt."

It is my opinion that the judgment should be affirmed.

Mr. Justice Pringle authorizes me to state that he concurs in these views.